# EXHIBIT A

U.S. Department of Justice
United States Marshals Service



# REQUEST
## FOR SERVICE ABROAD OF JUDICIAL OR EXTRAJUDICIAL DOCUMENTS

*DEMANDE*
*AUX FINS DE SIGNIFICATION OU DE NOTIFICATION À L'ETRANGER*
*D'UN ACTE JUDICIAIRE OU EXTRAJUDICIAIRE*

Convention on the service abroad of judicial and extrajudicial documents in civil or commercial matters, signed at The Hague, November 15, 1965.
*Convention relative à la signification et à la notification à l'étranger des actes judiciaires ou extrajudiciaires en matière civile ou commerciale, signée à La Haye, le 15 novembre 1965.*

| Identity and address of the applicant<br>*Identité et adresse du requérant* | Address of receiving authority<br>*Adresse de l'autorité destinataire* |
|---|---|
| J. Ray Ayers, Esq.<br>SCUDI, JOHNSON & AYERS, LLP.<br>5440 Morehouse Dr. Ste. 4400<br>San Diego, CA 92121-6723<br>United States of America | MINISTRY OF FOREIGN AFFAIRS<br>Directorate-General of Legal Affairs<br>Plaza Juarez No. 20, Planta Baja<br>Edificio Tlatelolco, Colonia Centro<br>Delegacion Cuauhtemoc C.P. 06010<br>Mexico, D.F. |

The undersigned applicant has the honour to transmit — in duplicate— the documents listed below and, in conformity with article 5 of the above-mentioned Convention, requests prompt service of one copy thereof on the addressee, i.e.,
   (identity and address)
*Le requérant soussignée a l'honneur de faire parvenir--en double exemplaire--à l'autorité destinataire les documents ci-dessous énumérés, en la priant, conformément à l'article 5 de la Convention précitée, d'en faire remettre sans retard un exemplaire au destinataire, à savoir:*
   *(identité et adresse)*

DAVID MARQUEZ GASTELUM
Manzana 2, Lote 13, Miramar, Los Cabos, B.C.S. C.P. 23456, MEXICO

☒ (a) in accordance with the provisions of sub-paragraph (a) of the first paragraph of article 5 of the Convention.
   *a) selon les formes légales (article 5 alinéa premier, lettre a).*

☐ (b) in accordance with the following particular method (sub-paragraph (b) of the first paragraph of article 5):
   *b) selon la forme particulière suivante (article 5, alinéa premier, lettre b) :*

___

☐ (c) by delivery to the addressee, if he accepts it voluntarily (second paragraph of article 5)*:
   *c) le cas échéant, par remise simple (article 5, alinéa 2).*

The authority is requested to return or to have returned to the applicant a copy of the documents and of the annexes with a certificate as provided on the reverse side.
*Cette autorité est priée de renvoyer ou de faire renvoyer au requérant un exemplaire de l'acte - et de ses annexes - avec l'attestation figurant au verso.*

| List of documents<br>*Enumération des pièces* | Done at San Diego, California, US, the 8/2/2011<br>*Fait à _____, le _____* |
|---|---|
| See Attachment "A" | Signature and/or stamp<br>*Signature et/ou cachet* |

*Delete if inappropriate
Rayer les mentions inutiles.*

Form USM-94
Est. 11/77
(Formerly OBD-116, which was formerly LAA-116, both of which may still be used)

# CERTIFICATE
## *ATTESTATION*

The undersigned authority has the honour to certify, in conformity with article 6 of the Convention,
*L'autorité soussignée a l'honneur d'attester conformément à l'article 6 de ladite Convention,*

1) that the document has been served *
1) *que la demande a été exécutée*
   - the (date) -- *le (date)* _____
   - at (place, street, number) - *à (localité, rue, numéro)*
   
   _____

   -- in one of the following methods authorized by article 5:
   -- *dans une des formes suivantes prévues à l'article 5:*

   ☐ (a) in accordance with the provisions of sub-paragraph (a) of the first paragraph of article 5 of the Convention*.
      *a) selon les formes légales (article 5. alinéa premier, lettre a)*

   ☐ (b) in accordance with the following particular method:
      *b) selon la forme particulière suivante:* _____

   ☐ (c) by delivery to the addressee, who accepted it voluntarily.*
      *c) par remise simple.*

The documents referred to in the request have been delivered to:
*Les documents mentionnés dans la demande ont été remis à:*

   - (identity and description of person)
   - *(identité et qualité de la personne)*

   _____

   - relationship to the addressee family, business or other
   - *liens de parenté de subordination ou autres avec le destinataire de l'acte:*

   _____

2) that the document has not been served, by reason of the following facts*:
2) *que la demande n'a pas été exécutée, en raison des faits suivants:*

_____

In conformity with the second paragraph of article 12 of the Convention, the applicant is requested to pay or reimburse the expenses detailed in the attached statement*
*Conformément à l'article 12, alinéa 2, de ladite Convention, le requérant est prié de payer ou de rembourser les frais dont le détail figure au mémoire ci-joint.*

ANNEXES
*Annexes*

Documents returned:
*Pieces renvoyées*

_____
_____
_____

In appropriate cases, documents establishing the service:
*Le cas échéant, les documents justificatifs de l'exécution:*

_____
_____

Done at _____ , the _____
*Fait à*                  , *le*

Signature and/or stamp
*Signature et/ou cachet*

SUMMARY OF THE DOCUMENT TO BE SERVED

Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, signed at The Hague, the 15th of November 1965

(Article 5, fourth paragraph)

Identité et adresse du destinataire / *Identity and address of the addressee* / -----:

```
DAVID MARQUEZ GASTELUM
Manzana 2, Lote 13,
Miramar, Los Cabos, B.C.S.
C.P. 23573, MEXICO
```

IMPORTANT

LE DOCUMENT CI-JOINT EST DE NATURE JURIDIQUE ET PEUT AFFECTER VOS DROITS ET OBLIGATIONS. LES «ELEMENTS ESSENTIELS DE L'ACTE» VOUS DONNENT QUELQUES INFORMATIONS SUR SA NATURE ET SON OBJET. IL EST TOUTEFOIS INDISPENSABLE DE LIRE ATTENTIVEMENT LE TEXTE MEME DU DOCUMENT. IL PEUT ETRE NECESSAIRE DE DEMANDER UN AVIS JURIDIQUE.

SI VOS RESSOURCES SONT INSUFFISANTES, RENSEIGNEZ-VOUS SUR LA POSSIBILITE D'OBTENIR L'ASSISTANCE JUDICIAIRE ET LA CONSULTATION JURIDIQUE SOIT DANS VOTRE PAYS SOIT DANS LE PAYS D'ORIGINE DU DOCUMENT.

LES DEMANDES DE RENSEIGNEMENTS SUR LES POSSIBILITES D'OBTENIR L'ASSISTANCE JUDICIAIRE OU LA CONSULTATION JURIDIQUE DANS LE PAYS D'ORIGINE PEUVENT ETRE ADRESSEES A :

*IMPORTANT*

*THE ENCLOSED DOCUMENT IS OF A LEGAL NATURE AND MAY AFFECT YOUR RIGHTS AND OBLIGATIONS. THE 'SUMMARY OF THE DOCUMENT TO BE SERVED' WILL GIVE YOU SOME INFORMATION ABOUT ITS NATURE AND PURPOSE. YOU SHOULD HOWEVER READ THE DOCUMENT ITSELF CAREFULLY. IT MAY BE NECESSARY TO SEEK LEGAL ADVICE.*

*IF YOUR FINANCIAL RESOURCES ARE INSUFFICIENT YOU SHOULD SEEK INFORMATION ON THE POSSIBILITY OF OBTAINING LEGAL AID OR ADVICE EITHER IN THE COUNTRY WHERE YOU LIVE OR IN THE COUNTRY WHERE THE DOCUMENT WAS ISSUED.*

ENQUIRIES ABOUT THE AVAILABILITY OF LEGAL AID OR ADVICE IN THE COUNTRY WHERE THE DOCUMENT WAS ISSUED MAY BE DIRECTED TO: www.casd.uscourts.gov

---

Il est recommandé que les mentions imprimées dans cette note soient rédigées en langue française et en langue anglaise et le cas échéant, en outre, dans la langue ou l'une des langues officielles de l'Etat d'origine de l'acte. Les blancs pourraient être remplis soit dans la langue de l'Etat où le document doit être adressé, soit en langue française, soit en langue anglaise.

*It is recommended that the standard terms in the notice be written in English and French and where appropriate also in the official language, or one of the official languages of the State in which the document originated. The blanks could be completed either in the language of the State to which the documents is to be sent, or in English or French.*

Name and address of the requesting authority:

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
940 Front Street
San Diego, CA 9201-8900

Particulars of the parties: *

PLAINTIFFS: STEVEN CAMPELL and CARLOTA FRANKLIN-CAMPBELL.
DEFENDANTS: WILLIAM LOGUE, an individual and as a Trustee for The
Sears/Logue revocable Trust; THE SEARS LOGUE RECOVABLE TRUST; DAVID MARQUEZ,
an individual; and MIKELSON YACHTS, INC., a California Corporation; BLUE
WATER YACHT BUILDERS, LTD, a Foreign Corporation; NAN YA PLASTICS CORP.

## JUDICIAL DOCUMENT **

Nature and purpose of the document:

NATURE:  SUMMONS AND CIVIL COMPLAINT
PURPOSE: CIVIL COMPLAINT FOR 1)NEGLIGENCE-FAILURE TO WARN; 2)NEGLIGENCE
-UNSAFE OPERATION;3)STRICT PRODUCT LIABILITY-DESIGN DEFECT; 4)STRICT PRODUCT
LIABILITY -FAILURE TO WARN; AND 5)LOSS OF CONSORTIUM.

Nature and purpose of the proceeding and, where appropriate, the amount in dispute:

SEE ATTACHMENT "B"

Date and place for entering appearance: **

SEE ATTACHMENT "C"

Court which has given judgment: **

N/A. ONLY THE SUMMONS AND COMPLAINT ARE BEING SERVED, THERE IS NO JUDGMENT.

Date of judgment: **

N/A. ONLY THE SUMMONS AND COMPLAINT ARE BEING SERVED, THERE IS NO JUDGMENT.

Time limits stated in the document: **

21 CALENDAR DAYS AFTER SERVICE TO ANSWER THE COMPLAINT, NOT COUNTING THE
DATE OF SERVICE.SEE ATTACHMENT "C".

## EXTRAJUDICIAL DOCUMENT **

Nature and purpose of the document:

N/A

Time limits stated in the document: **

N/A

# ATTACHMENT "A"

## REQUEST FOR SERVICE ABROAD OF JUDICIAL OR EXTRAJUDICIAL DOCUMENTS

Convention on the Service Abroad of Judicial and Extrajudicial Documents
in Civil or Commercial Matters, signed at The Hague, November 15, 1965.

1. Complaint (Original and one (1) copy).
2. Spanish certified translation of the Complaint (Original and one (1) copy).
3. Summons (Original and one (1) copy).
4. Spanish certified translation of the Summons (Original and one (1) copy).
5. Court Order authorizing J. Ray Ayers to request service of process abroad through The Hague Convention (Original and one (1) copy).
6. Spanish certified translation of the Court Order authorizing J. Ray Ayers to request service of process abroad through The Hague Convention (Original and one (1) copy).

## ATTACHMENT "B"

## REQUEST FOR SERVICE ABROAD OF JUDICIAL OR EXTRAJUDICIAL DOCUMENTS

Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, signed at The Hague, November 15, 1965.

NATURE AND PURPOSE OF THE PROCEEDINGS AND, WHERE APPROPRIATE, THE AMOUNT IN DISPUTE:

Civil Complaint for: (1) Negligence -Failure to Warn; (2) Negligence - Unsafe Operation; (3) Strict Product Liability -Design Defect; (4) Strict Product Liability -Failure to Warn; and (5) Loss of Consortium.

```
SCUDI JOHNSON & AYERS, LLP
Morgan J.C. Scudi (# 147942)
A. Melissa Johnson (#187441)
5440 Morehouse Drive, Suite 4400
San Diego, CA 92121
(858) 558-1001

Attorneys for Plaintiffs
```

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN CAMPBELL, an individual; and CARLOTA FRANKLIN-CAMPBELL, an individual. <br><br> Plaintiffs, <br><br> v. <br><br> WILLIAM LOGUE, an individual and as a Trustee for The Sears/Logue Revocable Trust ; THE SEARS/LOGUE REVOCABLE TRUST; DAVID MARQUEZ, an individual; MIKELSON YACHTS, INC., a California Corporation; BLUEWATER YACHT BUILDERS, LTD., a Foreign Corporation; YA PLASTICS CORPORATION, a Foreign Corporation; and NAN YA PLASTICS CORPORATION, a Delaware Corporation <br><br> Defendants. <br><br> AND RELATED CROSS-ACTIONS. | CASE NO. 10-CV-1821-JM-POR <br><br> FIRST AMENDED COMPLAINT FOR: <br><br> (1) Negligence- Failure to Warn <br> (2) Negligence - Unsafe Operation <br> (3) Strict Product Liability - Design Defect <br> (4) Strict Product Liability - Failure to Warn <br> (5) Loss of Consortium <br><br> Judge: Jeffrey T. Miller <br> Ctrm. 16 |

COME NOW Plaintiffs STEVEN CAMPBELL and CARLOTA FRANKLIN-CAMPBELL, by and through their attorneys, Scudi Johnson & Ayers, LLP and hereby allege:

1. This court has jurisdiction pursuant to 28 U.S. § 1333 as it arises within the Admiralty or Maritime jurisdiction of this court.

1

FIRST AMENDED COMPLAINT


2. Venue is appropriate because Defendants WILLIAM LOGUE ("Logue"), THE SEARS/LOGUE REVOCABLE TRUST, and MIKELSON YACHTS, INC. ("Mikelson Yachts"), are residents of San Diego County, California, in this judicial district.

3. Defendant DAVID MARQUEZ ("Marquez" and/or "Captain") is, upon information and belief, a resident of Mexico and an employee of Logue and/or the Sears/Logue Revocable Trust.

4. Plaintiffs STEVEN CAMPBELL and CARLOTA FRANKLIN-CAMPBELL are, and at all times relevant to this complaint were, citizens and residents of San Diego County, California.

5. MIKELSON YACHTS, INC., is a California corporation with its principal place of business in San Diego County, California.

6. Upon information and belief, BLUEWATER YACHT BUILDERS, LTD. ("Bluewater") is a Taiwanese Corporation which manufactures vessels for Mikelson Yachts, including but not limited to the "Andale," the vessel at issue in this action.

## STATEMENT OF FACTS COMMON TO ALL CAUSES OF ACTION

7. In or about December 7, 2008, Plaintiff Steven Campbell was injured aboard the "Andale," a 2007 Model, 57 foot Mikelson Luxury Sports Fisher, while the Andale was operating in International waters off the southern tip of Baja California.

8. Upon information and belief, the Andale is a documented U.S. vessel, owned by Defendant Logue as Trustee for The Sears/Logue Revocable Trust at the time in question. Upon information and belief, the vessel was been sold to a third party buyer sometime in 2011.

9. Upon information and belief, during the time period the vessel was owned by Defendant Logue, the Andale often operated as a charter boat in Cabo San Lucas, Mexico. The Andale was captained by Defendant David Marquez (hereinafer "Captain"), with his son Andy Marquez acting as deckhand and mate (hereinafer "Mate") for sports fishing.

10. The Andale is designed and rigged for fishing on its fore and aft decks; the fore deck has a bait tank, railings, and a pulpit for casting. The aft deck, or cockpit, is also fitted with bait tanks, is utilized for cast fishing or trolling, and has a fighting chair in the center of a cockpit.

///

11. On December 7, 2008, Defendant David Marquez, under the direction and control of Logue, captained the Andale. The Andale was at sea while Plaintiff Steven Campbell, Robert Garavello, and Defendant Logue fished for marlin. Andy Marquez was also onboard as mate/deckhand.

12. Plaintiff Campbell went to the foredeck to fish, which was a common practice for him and others on the Andale. Defendant Marquez was operating the Andale too aggressively for him to fish from the foredeck, and he so informed Logue after he came back to the aft portion of the vessel. Logue responded that he would have Marquez put the Andale in a controlled drift so that Campbell could fish from the foredeck, while Logue assisted Garavello in cast fishing from the aft deck. Defendant David Marquez called out that he had spotted marlin off the bow of the Andale. With the Andale put into a controlled drift, Campbell and the mate, Andy Marquez, again went to the fore deck and began casting for marlin.

13. Plaintiff Campell lost the bait on his initial cast, and the mate handed another rod to Campbell for casting. The marlin were located on the starboard side of the Andale, and so Plaintiff Campbell began to move aft down the starboard side of the foredeck. He was reaching for the railing on the starboard side of the foredeck when, without warning, the Andale went underway aggressively, knocking Campbell down. The facts that 1) the deck was unreasonably slippery, lacking a proper non-skid surface, and 2) the railing along the deck was too low, contributed to the fall and the severity of Campbell's injuries.

14. Plaintiff Campbell landed on his left hip, hit his head, and was unable to rise. Campbell was in great pain and unable to use his legs. The Andale was stopped, and the Andy Marquez, Garavello, and Logue came to Campbell's assistance and slid Campbell to the cockpit and carried him into the salon. The severity of his injuries dictated that the Andale head directly back to port at Cabo San Lucas. The ship-to-shore radio was used to notify Mrs. Campbell of the accident, and to seek medical care.

15. At port, the Captain was heard to say he gave Campbell a vacation, and has subsequently stated, when asked why he put the Andale underway with Campbell on the fore deck, that Mr. Logue told him to do so.

16. Neither the Captain, nor Logue made any effort to warn Campbell and the Mate of their decision to put the Andale underway.

17. Following the injury at sea, Campbell was in tremendous pain, suffered from a hematoma and a broken pelvis, and he spent the next hours heading to port without pain medication.

18. At port, two Blue Med technicians met the Andale, but the ambulance was parked blocks away. Campbell, unable to walk and in great pain, had to be carried through the docks and up the walkways of a busy port.

19. At the Blue Med Care facility, Campbell was examined by a Mexican physician, x-rayed, and told that he had a broken pelvis. The physician stated that Mr. Campbell needed an operation, but that they had no blood for him if they operated in Cabo. It was recommended that, if he could afford it, he should be flown back to San Diego for hospital care.

20. Mrs. Campbell arranged a for a Medi-VAC evacuation by plane to take Campbell to Scripps Hospital in San Diego on the morning of December 8, 2008. Campbell spent the rest of the night at the Blue Med Care facility in Cabo San Lucas. On December 8, 2008, Campbell, two technicians, and Garavello flew to Brown Field in San Diego by Lear jet, where Campbell was taken by ambulance to Scripps Memorial and admitted. Campbell's injuries were extensive.

21. Upon arrival in San Diego, Campbell was admitted to Scripps Memorial Hospital on December 8, 2008. On December 10, 2008, Plaintiff Campbell had surgery to repair a complex left acetabular fracture of his pelvis. Eight days later, on December 18, 2008, while still in recovery, Campbell developed confusion, loss of awareness, decreased mentation, and was noted to have a huge right side subdural hematoma. Campbell underwent surgery, and the subdural hematoma was drained by temporarily removing a portion of Campbell's skull

22. Campbell's skull subsequently became infected, and the bone that had been replaced in the previous operation, was removed permanently in a further operation. Campbell was put on a strict antibiotic regimen under which he received daily injections at the hospital for six weeks, and he wore a protective helmet for months because a portion of his skull was missing. Once the bone infection was treated, Campbell underwent a fourth operation on June 23, 2009, in which a permanent plastic plate was inserted in his head to replace the missing skull. Campbell continued

1 physical therapy for his pelvis.

2    23.   In short, Campbell arrived in San Diego with four (4) breaks to his pelvis and a hematoma that continued to bleed. He spent weeks in intensive care, two months at Scripps La Jolla Hospital, and one month at Scripps rehabilitation facility in Encinitas, California. He had four surgeries; the last surgery was on June 23, 2009, to insert a plastic plate in his skull. He was cleared by the orthopedic surgeon on May 3, 2010.

### FIRST CAUSE OF ACTION

(Negligence-Unsafe Condition Against Defendants Logue, The Sears/Logue Revocable Trust, and David Marquez)

24.   Plaintiffs refer to and incorporate by this reference paragraphs 1 through 23 inclusive, as though fully set forth herein.

24.   Defendants had a duty to warn Campbell of any unsafe or defective condition on the Andale.

25.   Defendants failed to do so and breached their duty to warn Campbell of the unreasonably slippery condition of the Andale's foredeck and the fact that the foredeck's railing was unreasonably low. Campbell fell on his hip and hit his head while fishing from the foredeck in a normal, reasonable and expected manner. But for the unreasonably slippery condition of the foredeck and the unreasonably low railing, and Defendants failure to warn of this unsafe condition on the foredeck, Plaintiff Campbell would not have fallen and would not have suffered sever injuries.

26.   Defendants are liable for the damages for proximately caused by their breach of duty. Campbell was acting within the scope of his invitation, as an invitee of Logue on the Andale, and was on the foredeck cast fishing at a location fitted with a bait tank for that purpose. Logue had the Andale put into a controlled drift so that Campbell could fish from the foredeck. Defendants knew where Campbell was, and told Campbell specifically that the Andale would be in a controlled drift so he could fish from the bow.

27.   Defendants breach of duty proximately caused the injuries to Campbell in an amount to be proven at time of trial.

5

FIRST AMENDED COMPLAINT

## SECOND CAUSE OF ACTION

(Negligence-Unsafe Operation of Vessel Against Defendants Logue, The Sears/Logue Revocable Trust, and David Marquez)

28. Plaintiffs refer to and incorporate by this reference paragraphs 1 through 27 inclusive, as though fully set forth herein.

29. Defendants owed a duty of care to Campbell to operate the Andale in a safe manner.

30. Defendants failed and breached their duty to Campbell by failing to operate the Andale in a safe manner. Campbell and the Mate were fishing from the foredeck during a controlled drift, when under the direction of Logue, the Captain put the Andale in gear. The Captain caused the Andale suddenly to go forward and knocked Campbell from his feet and causing him to land on his hip and hit his head on the deck.

31. Defendants are liable for the damages proximately caused by their breach of duty. Campbell was acting within the scope of his invitation, as an invitee of Logue on the Andale, and was on the foredeck cast fishing at a location fitted with a bait tank for that purpose. Logue had the Andale put in a controlled drift so Campbell could fish where he did. Defendants knew where Campbell was, and told Campbell specifically that the Andale would be in a controlled drift so he could fish from the bow.

32. Defendants had a duty to maintain a lookout be aware of all passengers before putting the vessel into gear and maneuvering the vessel. Logue and the Captain had a duty to warn Plaintiff Campbell that they were about to put the boat underway, and allow him time to secure himself and prevent injury such as those suffered by Plaintiff. That failure, coupled with putting the Andale into gear, proximately caused the injuries to Campbell in an amount to be proven at time of trial.

## SECOND CAUSE OF ACTION

(Strict Product Liability - Design Defect against Mikelson Yachts, Inc. and Bluewater Yacht Builders, Ltd.)

33. Plaintiffs refer to and incorporate by this reference paragraphs 1 through 32 inclusive, as though fully set forth herein.

///

6

FIRST AMENDED COMPLAINT

APR-20-2012 14:49           6241306964           95%                P.12

34. The Andale, a 57 foot Mikelson luxury sports fisher, was specifically designed by Defendant Mikelson Yachts for long range sports fishing. The Andale was rigged with bait tanks fore and aft, specifically for cast fishing from the fore and aft decks.

35. Upon information and belief, the Andale was manufactured by Bluewater at the direction of Mikelson Yachts, including the design of the foredeck and its surface, along with bait tanks for cast fishing.

36. Defendant Mikelson Yachts and Bluewater together designed and manufactured the Andale to Logue' specifications and at his specific instruction, and Mikelson subsequently distributed and sold the Andale to Logue.

37. It was foreseeable that the foredeck would be used for cast fishing and, indeed the vessel was designed such that persons can fish from the foredeck. Mikelson Yachts specifically states in its brochures that ,"deck areas are wide and accessible, with nice looking and functional slip-proof and rails where they need to be."

38. The "slip-proof" surface utilized by Mikelson Yachts and Bluewater was, upon information and belief, improperly selected, designed and manufactured and was defective for the purpose for which it was intended in that it was unreasonably slippery during normal and expected use. Likewise, the foredeck's railing was, upon information and belief, improperly selected, designed and manufactured and was defective for the purpose for which it was intended in that it was unreasonably low for normal and expected use

39. Due to the failure of the supposed non-skid surfaces on the foredeck to actually perform the function for which it was intended and unreasonably low railings, the Andale was not safe for fishing as the ordinary user would expect because the foredeck's surface was unreasonably slippery and the railing unreasonably low.

40. On December 7, 2008, while Plaintiff was aboard the Andale and fishing from the foredeck, he fell on his hip and hit his head. But for the unreasonably slippery and defective foredeck surface and unreasonably low railing, Plaintiff would not have fallen. The defective foredeck surface and railing were proximate causes of the injuries to Plaintiff.

///

1  41.  Plaintiff Steven Campbell suffered damages caused by the defective foredeck and railing in the form of lost income, medical expenses, and pain and suffering in an amount to be proven at time of trial.

### FOURTH CAUSE OF ACTION

**(Strict Product Liability - Failure to Warn Against Mikelson Yachts, Inc. and Bluewater Yacht Builders, Ltd.)**

42.  Plaintiff refers to and incorporates by this reference paragraphs 1 through 41 inclusive, as though fully set forth herein.

43.  The Andale, a 57 foot Mikelson Yachts luxury sports fisher, was specifically designed by Mikelson Yachts for long range sports fishing. The Andale was rigged with bait tanks fore and aft, specifically for cast fishing from the fore and aft decks.

44.  Upon information and belief, the Andale was manufactured by Bluewater at the direction of Mikelson Yachts, including the design of the foredeck and its surface and railings, along with bait tanks for cast fishing.

45.  Defendant Mikelson Yachts and Bluewater together designed and manufactured the Andale to Logue' specifications and at his specific instruction, and Mikelson subsequently distributed and sold the Andale to Logue.

46.  It was foreseeable that the foredeck would be used for cast fishing and Mikelson Yachts specifically states in brochures that," deck areas are wide and accessible, with nice looking and functional slip-proof and rails where they need to be."

47.  The "slip-proof" surface utilized by Mikelson Yachts was, upon information and belief manufactured by Bluewater Yacht Builders, Ltd. The "slip-proof" surface utilized by Mikelson Yachts and Bluewater was, upon information and belief, improperly selected, designed and manufactured and was defective for the purpose for which it was intended in that it was unreasonably slippery during normal and foreseeable use. Likewise, the foredeck's railing was, upon information and belief, improperly selected, designed and manufactured and was defective for the purpose for which it was intended in that it was unreasonably low for normal and expected use.

///
///

48. It was foreseeable that the vessel would be in motion when persons were walking on the foredeck's surface while the Andale was being utilized for fishing. Therefore the Andale had the potential to cause injury. This fact was known or should have been known by Mikelson Yachts and Bluewater Yacht Builders, Ltd. at the time of manufacture, distribution and sale.

49. Due to the failure of the non-skid surfaces and railings on the decks to actually perform their designated function, the Andale was not as safe as the ordinary user would expect. The potential risks of not having a properly functioning non-skid surface and railings on the foredeck presented a substantial danger to persons aboard the Andale.

50. The ordinary user would not have recognized the potential risks caused by a defective foredeck surface and railings.

51. Mikelson Yachts and Bluewater Yacht Builders, Ltd. failed to adequately warn or instruct regarding the potential risks caused by the unreasonably slippery foredeck and unreasonably low railings.

52. On December 7, 2008, while Plaintiff was aboard the Andale and fishing from the foredeck, Plaintiff fell and was injured as he was fishing from the foredeck of the Andale in a location which was intended for fishing. But for the failure of Mikelson Yachts and Bluewater Yacht Builders to warn of the defective condition of the foredeck surface and railings, Plaintiff would not have been injured.

53. The lack of sufficient warning or instruction was a proximate cause and substantial factor in Plaintiff's resulting injuries. Plaintiff suffered substantial damages in the form of lost income, medical expenses, and pain and suffering, in an amount to be proven at time of trial.

## FOURTH CAUSE OF ACTION

### (Loss of Consortium Against All Defendants)

54. Plaintiffs refer to and incorporate paragraphs 1 through 53 inclusive, as though fully set forth herein.

55. Plaintiff Carlota Campbell is, and at all times relevant to this action was, married to Plaintiff Steve Campbell and lost the care, comfort and consortium of her husband as a result of his injuries. Said injuries were caused by the actions of Defendants, as stated herein.

WHEREFORE, Plaintiffs pray for relief as follows:

1. For past and future general damages in an amount to be proven at trial;
2. For special damages in an amount to be proven at trial;
3. For consequential damages in an mount to be proven at trial;
4. For reasonable costs and attorneys' fees; and
5. For such other relief as this Court may deem just and proper.

Dated  July 20, 2011                     SCUDI JOHNSON & AYERS, LLP


                                         By:  s/ J. Ray Ayers
                                              Morgan J.C. Scudi
                                              J. Ray Ayers
                                              Attorney for Plaintiffs

10

FIRST AMENDED COMPLAINT