**KAYE, ROSE & PARTNERS, LLP**
Frank C. Brucculeri, Esq. (137199)
Daniel F. Berberich, Esq. (215946)
1801 Century Park East, Suite 1500
Los Angeles, CA 90067
Telephone: (310) 551-6555
Facsimile: (310) 277-1220
fbrucculeri@kayerose.com
dberberich@kayerose.com

Attorneys for Defendants
**MIKELSON YACHTS, INC. and BLUEWATER YACHT BUIILDERS, LTD.**

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN CAMPBELL, an individual; and CARLOTA FRANKLIN-CAMPBELL, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>WILLIAM LOGUE, an individual and as a Trustee for the Sears/Logue Revocable Trust; THE SEARS LOGUE REVOCABLE TRUST; DAVID MARQUEZ, an individual; BLUEWATER YACHTS, INC., a California Corporation; NAN YA PLASTICS CORPORATION, a Foreign Corporation; NAN YA PLASTICS CORPORATION, a Delaware Corporation,<br><br>Defendants.<br><br>AND RELATED CROSS-ACTIONS | Case No.: 10-CV-1821-JM-DHB<br><br>**IN ADMIRALTY**<br><br>**MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR PARTIAL SUMMARYJUDGMENT ON THE ISSUE OF CAUSATION FOR PLAINTIFF STEVEN CAMPBELL'S ALLEGED HEAD INJURY**<br><br>Date: February 19, 2013<br>Time: 11:00 a.m.<br>Judge: Jeffrey T. Miller<br>Place: Courtroom 16 |

TABLE OF CONTENTS

Page

I. INTRODUCTION AND SUMMARY OF ARGUMENT ........................ 1

II. MATERIAL UNDISPUTED FACTS ...................................................... 4

    A. Complaint Allegations ................................................................ 4

    B. Plaintiff's Pre-Existing Heart Condition and Stenting Procedure ..................................................................................... 4

    C. Plaintiff's Specific Contentions Re Fall and Head Injury Aboard ANDALE ....................................................................... 4

    D. Dr. Lobatz's Record Review and Expert Opinion Re Causation .................................................................................... 5

    E. Other than to Say that the Condition Was "Acute," Dr. Leary Refused To Opine as to the Cause of the Subdural Hematoma ......... 7

III. THIS COURT HAS AUTHORITY TO ENTER Partial SUMMARY JUDGMENT in this case ...................................................... 7

IV. THE ONLY ADMISSABLE MEDICAL EXPERT OPINION IN THIS CASE IS THAT pLAINTIFF'S SUBDURAL HEMATOMA IS NOT CAUSALLY RELATED TO TRAUMA FROM THE fISHING INCIDENT ............................................................................ 8

    A. Expert Testimony Is Necessary to Establish Medical Causation .................................................................................... 9

    B. The Absence of Expert Testimony By Plaintiff On The Issue Of Causation is Fatal to Plaintiffs' Claims for Damages Based on the Subdural Hematoma .......................................................... 11

V. CONCLUSION ................................................................................... 12

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

# TABLE OF AUTHORITIES

Page

**Cases**

*Adickes v. S.H. Kress & Co.*
    398 U.S. 144 ...................................................................................................8

*Anderson v. Liberty Lobby, Inc.*
    477 U.S. 242 ...................................................................................................8

*Bromme v. Pavvit,*
    5 Cal.App.4th 1487 (1992) ....................................................................3, 10

*Cottle v. Superior Court*
    (1992) 3 Cal.App.4th 1367 ....................................................................4, 9

*East River S.S. Co. v. TransAmerica DeLeval, Inc.*
    476 U.S. 858 (1986) ........................................................................................9

*Jennings v. Polomar Pomerado Health Systems, Inc.*
    (2003) 114 Cal.App.4th 1108 ..............................................................3, 10

*Jones v. Ortho Pharmaceutical Corp.*
    163 Cal.App.l3d 396 ...............................................................................10, 11

*Malinson v. Black*
    (1948) 83 Cal.App.2d 375 .............................................................................11

*Miranda v. Bomel Construction Co., Inc.*
    187 Cal.App.4th 1326 (2010) .......................................................................11

*Nelson v. County of Los Angeles*
    (2003) 113 Cal.App.4th 783 .........................................................................10

*Simmons v. West Covina Med. Ctr.*
    212 Cal.App.3d 696 (1989) ...........................................................................11

*Wallis v. Princess Cruises, Inc.*
    306 F.3d 827, 841 (9th Cir. 2002) ..................................................................9

**Rules**

F.R.C.P. Rule 26 ......................................................................................................3

Rule 56(c) F.R.C.P ...................................................................................................7

# MEMORANDUM OF POINTS & AUTHORITIES

## I. INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiff Steven Campbell ("Plaintiff") alleges that on December 7, 2008 he fell and was injured while big game fishing from the bow of the motor yacht *ANDALE* off the coast of Cabo San Lucas, Mexico. The *ANDALE,* on which Plaintiff was an invited guest, was owned by Defendants William Logue and the Sears/Logue Revocable Trust ("Logue Defendants") and manufactured by Defendants Mikelson Yacht, Inc. and Bluewater Yacht (collectively "Mikelson"). As a result of his fall, Mr. Campbell fractured his left hip and underwent corrective surgery on December 10, 2008 in San Diego. Ten days after the fall, on December 18, Mr. Campbell was diagnosed with a sudden acute subdural hematoma on the right side of his head and underwent an emergency craniotomy to stop the bleeding and relieve pressure. While the Defendants do not dispute that Mr. Campbell in fact broke his left hip when he fell on the deck of the *ANDALE*, they dispute any causation between his fall and subdural hematoma and accordingly disavow all legal responsibility for any damages causally connected to the subdural hematoma.

Defendants submit that the facts, circumstances and un-rebutted expert medical testimony all lead to the unassailable conclusion that Plaintiff's subdural hematoma was not caused by any purported head injury related to his fall on the *ANDALE*. Although Plaintiff contends that **the left side of his head** struck the deck of the *ANDALE* in the fall, Plaintiff himself confirms that he did not suffer a bump or bruise on his head nor did he lose consciousness as a result of his fall.[1] Moreover, medical records from both the medical clinic in Mexico and Scripps Memorial Hospital on December 8, 2008 failed to disclose any head injury or

---

[1] See Campbell Deposition (lodged with the Court), at 79:1 – 80:1.

1

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

neurological issues, concerns, complaints or symptoms.[2] Indeed, it was only after ten days post incident that Plaintiff began to demonstrate an acute neurologic change which led to diagnosis of the subdural hematoma. Critically, based on all of the available medical records, medical and percipient testimony, Defendants' expert board certified neurologist, Dr. Michael A. Lobatz, opines it is speculative to conclude that any alleged head trauma sustained on December 8, 2008 is causally connected to the development of a subdural hematoma over time. See *Lobatz Report, Discussion,* at page 8: ". . .it is "speculative to say that this patient [Mr. Campbell] suffered head trauma and the development of a subdural hematoma over time." Dr. Lobatz further explains:

> "I say this because the blood appears acute, there was a finding of active bleeding at the time of the craniotomy and in the case of delayed subdural hematomas that are recognized at a later point following head trauma these are often bleeds that are slowly accumulating over time and it would not be expected to have findings of acute arterial bleeding at the point of craniotomy." *Id.*

In his formal Rule 26 Expert Report, Dr. Lobatz provides three additional facts/factors which support his conclusion that the subdural hematoma was not causally related to Mr. Campbell's fall. Dr. Lobatz notes that:

- Mr. Campbell's pre-craniotomy brain scans indicate "acute hemorrhage;[3]"
- Mr. Campbell's treating surgeon, Dr. Scott Leary noted at the time of his craniotomy that there was active bleeding coming from an arterial structure;

---

[2] See Dr. Lobatz Expert Report dated January 17, 2012 at "Record Review" at paragraphs 1 and 9 (pages 5 & 6). The Lobatz Expert Report (hereinafter "*Lobatz Report*" is attached at Exhibit "A" to Dr. Lobatz Declaration submitted herewith.
[3] According to Plaintiff's treating doctor, Dr. Leary, "acute" means "within 12 to 24 hours, or less." Leary Deposition, at 16:7-22.

2

- In all probability, had this "active bleeding" been occurring at the time of the initial injury it would have been very significant and caused the development of symptoms much at a much earlier date.[4]

Plaintiff has not and simply can not contradict Dr. Lobatz' well reasoned medical opinion on the causation issue, nor can he provide competent expert medical evidence necessary to establish that the fall on *ANDALE* was the proximate cause of the subdural hematoma. In the first instance, Plaintiff has not disclosed or provided Defendants with a competent medical expert report establishing causation regarding the subdural hematoma and is now precluded by F.R.C.P. Rule 26 from doing so.[5] Moreover, and perhaps most telling, Plaintiff's own operating physician, Dr. Leary, does not know what caused the subdural hematoma. Dr. Leary testified, "[a]nd all I can tell you is I have no opinion as to how this [subdural hematoma] started." Deposition of Scott Leary, M.D., attached to Brucculeri Decl. as Exhibit "A," at 19:14-22, 30:25-31:6, 34:2-20.

Defendants submit that in the face of Dr. Leary's inability to opine concerning the cause of Plaintiff's subdural hematoma, Plaintiff's failure to proffer <u>any</u> expert medical testimony on the issue of causation is absolutely fatal to Plaintiffs' claims for damages related to the subdural hematoma. It is well established that expert testimony is required to establish causation to a reasonable medical probability in personal injury cases because knowledge of injuries that are wholly subjective is generally beyond the common experience of the average fact finder. See e.g. *Jennings v. Polomar Pomerado Health Systems, Inc.* (2003) 114 Cal.App.4th 1108, 1118. See also *Bromme v. Pavvit*, 5 Cal.App.4th 1487, 1502 (1992) ("The law is well settled that in a personal injury action causation must be proven within a reasonable medical probability based [on] competent expert testimony. Mere possibility alone is insufficient to

---
[4] *Lobatz Report* at Page 8.
[5] See Magistrate's Order dated December 13, 2012.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

establish a prima facie case."). Indeed, "[c]ausation must be founded upon expert testimony and cannot be inferred from the jury's consideration of the totality of the circumstances unless those circumstances include the requisite expert testimony on causation." *Cottle v. Superior Court* (1992) 3 Cal.App.4th 1367, 1385.

For the reasons set forth herein, partial summary judgment on the issue of causation is warranted in this case and Defendants respectfully request that this Honorable Court grant the Motion and issue an Order precluding Plaintiff's claims for damages based on the subdural hematoma. See Plaintiff's First Amended Complaint ("FAC") at ¶¶ 14 & 21-23.[6]

## II. MATERIAL UNDISPUTED FACTS

### A. Complaint Allegations

Plaintiffs' First Amended Complaint seeks damages for an alleged head injury suffered aboard the ANDALE on December 7, 2008 and for damages related to a subdural hematoma that became patent on December 18. FAC, ¶¶ 17, 21-23, 26, 31, 41, 53 & 55.

### B. Plaintiff's Pre-Existing Heart Condition and Stenting Procedure

On October 9, 2008, Plaintiff was admitted to Scripps Green Hospital/Medical Facility for a myocardial infarction (heart attack) and angina (cardiac related chest pain).[7] He underwent a stenting procedure at that time. *Id.*

### C. Plaintiff's Specific Contentions Re Fall and Head Injury Aboard ANDALE

Plaintiff fell on the bow of the ANDALE, in the afternoon of December 7, 2008. *Campbell Depo.* at 103:10-15. As he was coming down the starboard side of the ANDALE reaching for the rail, all of a sudden, Plaintiff's feet violently went out from under him towards the bow, and he fell on his left side, right on

---

[6] Plaintiff's FAC can be found at Dkt. #44.
[7] Lobatz Expert Report, Record Review, at ¶ 6.

4
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

his left hip. *Campbell Depo.* at 71:19-23. Campbell testified that, "my feet went out from under me. The boat went forward violenty." *Campbell Depo.* at 77:19-21. The first part of Mr. Campbell's body to hit the deck of the vessel was his left pelvis. *Campbell Depo* at 79:5-15. The **main force** was on Mr. Campbell's right pelvis. *Id.* at 13-15 (Emphasis added).

Mr. Campbell has a specific recollection that he hit the left side of his head on the deck and that his hat flew off. *Campbell Depo.* at 80:9-15. Mr. Campbell did not get a bump or a bruise as a result of his head hitting the deck. *Id.* at 16-19. The best description that Mr. Campbell could provide concerning how hard he hit his head was to say, "[h]ard enough to flip my hat off." *Id.* at 20-24. Mr. Campbell did not lose consciousness. *Campbell Depo.* at 80:25 –81:1.

### D. <u>Dr. Lobatz's Record Review and Expert Opinion Re Causation</u>

Based on his review and analysis of medical records from both the medical clinic in Mexico and Scripps Memorial Hospital dated December 7 and 8 respectively, Defendants' expert neurologist, Dr. Lobatz, notes that there was no evidence of a "head injury"[8] or any "neurological problems" or "neurologic symptoms."[9] Mr. Campbell was admitted at Scripps Memorial Hospital in La Jolla on December 8, 2008.[10] He was seen by Dr. Tonks at that time and ultimately underwent an open reduction and internal fixation of his acetabular fracture. *Id.* Neurologically, there were no concerns or complaints upon Mr. Campbell's initial admission to Scripps. *Id.* During his hospitalization, Mr. Campbell was seen by the cardiology department and was continued on his previous medications of aspirin and ticlopidine ("Ticlid"). *Id.*

On December 18, 2008, Mr. Campbell was noted to have developed some weakness resulting in a referral to neurology.[11] An expanding large acute

---

[8] *Lobatz Expert Report*, Record Review, at ¶¶ 1 & 9 (pages 5 & 6).
[9] *Lobatz Expert Report*, Discussion, at p.7-8.
[10] *Lobatz Expert Report*, Record Review, at ¶ 9.
[11] *Lobatz Expert Report*, Record Review, at ¶ 9.

5

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

subdural hematoma was noted at that time with a deteriorating neurologic exam. *Id.* An initial CT scan of the brain demonstrated an acute right convexity subdural hematoma with a rounded area of low attenuation beneath the subdural or the right parietal frontal region consistent with an infarct.[12] The initial MRI done showed a brain with a 16.8-mm subdural hematoma on the right with convexity shift. *Id.*

Plaintiff was seen by a neurologist, Dr. Scott Leary, who performed a craniotomy and evacuation of a large acute subdural hematoma with the notation of arterial bleeding at the cortical surface.[13]

Indeed, it was only after ten days post incident that Plaintiff began to demonstrate an acute neurologic change which led to diagnosis of the subdural hematoma. In his formal expert report, Defendants' expert board certified neurologist, Dr. Michael A. Lobatz further notes that:

- Mr. Campbell's pre-craniotomy brain scans indicate "acute hemorrhage;"
- Mr. Campbell's treating surgeon, Dr. Scott Leary noted at the time of his craniotomy that there was active bleeding coming from an arterial structure;
- In all probability, had this "active bleeding" been occurring at the time of the initial injury it would have been very significant and caused the development of symptoms much at a much earlier date.[14]

Critically, based on all of the available data, Dr. Lobatz concludes that it is **"speculative to say that this patient [Mr. Campbell] suffered head trauma and the development of a subdural hematoma over time."** *Lobatz Report* at p. 8. Dr. Lobatz further explains as follows:

---

[12] *Lobatz Expert Report*, Record Review, at ¶ 12 (Imaging Review).
[13] *Lobatz Expert Report*, Record Review, at ¶ 9
[14] *Lobatz Report* at p. 8.

6

"I say this because the blood appears acute, there was a finding of active bleeding at the time of the craniotomy and in the case of delayed subdural hematomas that are recognized at a later point following head trauma these are often bleeds that are slowly accumulating over time and it would not be expected to have findings of acute arterial bleeding at the point of craniotomy."
*Id.*

### E. Other than to Say that the Condition Was "Acute," Dr. Leary Refused To Opine as to the Cause of the Subdural Hematoma

Dr. Leary testified that based on what he personally visualized during the surgical procedure, it appeared that Mr. Campbell's condition was "acute" in nature. *Leary Depo* at 16:7-22. Dr. Leary testified, "[t]his patient developed a spontaneous **acute** large right frontoparietal subdural hematoma." Dr. Leary further explained that by **"acute"** he meant, **"in the 12- to 24-hour range,"** or **"even less."** *Id.* (Emphasis added). In spite of this key notation, Dr. Leary refused to indicate the "cause" or timing of the subdural hematoma. *Id.* at 15:25 through 16:9.[15] On this important point, he testified as follows: **"[a]nd all I can tell you is I have no opinion as to how this [subdural hematoma] started."** *Id.* at 19:14-22, 30:25-31:6, 34:2-20. (Emphasis added).

## III. THIS COURT HAS AUTHORITY TO ENTER PARTIAL SUMMARY JUDGMENT IN THIS CASE

Rule 56(c) of the Federal Rules of Civil Procedure ("F.R.C.P.") authorizes summary judgment where the pleadings and supporting material show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248,

---

[15] Dr. Leary also testified that the CT scan and MRI studies taken prior to the craniotomy did not allow him to pinpoint when the bleed began. *Id.* at 12:8-25.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202, 211 (1986). When a "properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Id.* at 250. The court's focus in reviewing a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

The moving party has the burden to establish the absence of a genuine issue as to any material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S. Ct. 1598, 1608, 26 L. Ed. 2d 142, 154 (1970). Once the moving party has established that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law, the burden shifts to the non-movant to come forward with a response setting forth "specific facts" showing that there is a genuine issue for trial. *Id.*

The party opposing summary judgment may not rest upon the mere allegations or denials of the pleadings, but must present sufficient evidence favoring the non-moving party for a jury to return a verdict in favor of that party. *Anderson*, 477 U.S. at 249. Moreover, the "mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252.

## IV. THE ONLY ADMISSABLE MEDICAL EXPERT OPINION IN THIS CASE IS THAT PLAINTIFF'S SUBDURAL HEMATOMA IS NOT CAUSALLY RELATED TO TRAUMA FROM THE FISHING INCIDENT

With the single exception of Plaintiff's treating neurologist, Dr. Leary, who performed the craniotomy on December 18, 2008, Defendants' expert neurologist, Dr. Lobatz, is the only expert in this case to render and opinion

concerning causation for the subdural hematoma. Interestingly, Dr. Leary could not or would not opine as to the cause of the subdural hematoma. Indeed, other than to say that the bleed was "acute" in nature, Dr. Leary expressly refused to comment as the cause of the subdural hematoma or to indicate when it might have started. *Supra* at II.(b) and *Leary Depo.* at 15:25 – 16:22, 19:14-22, 30:25 – 31:6, and 34:2-20. As set forth in detail above[16], Dr. Lobatz opines that it would be speculative to conclude that the subdural hematoma was causally related to the incident and alleged bump to the head. *Lobatz Expert Report* at Discussion, p.7-8. This opinion, which is based on the undisputed facts and medical evidence in this case, is un-rebutted and indeed un-rebuttable since Plaintiff has not proffered a competent expert neurological report providing any indication that Mr. Campbell's subdural hematoma was caused either by the incident aboard the ANDALE or any condition for which the Defendants might be legally responsible. While Plaintiffs will no doubt attempt to rebut or challenge Dr. Lobatz's expert conclusions with lay evidence, speculation and conjecture, Plaintiffs simply cannot meet their burden or proof as to causation without some competent expert medical testimony connecting the subject incident to the subdural hematoma.

A. <u>**Expert Testimony Is Necessary to Establish Medical Causation**</u>

It is well established that expert testimony is necessary and indeed critical to proof of causation in a personal injury action like the one here involved. In *Cottle v. Superior Court* (1992) 3 Cal.App.4th 1367, 1385[17], the court held that

---

[16] See *Supra* at Section II.(D).
[17] Defendants submit that it is fully appropriate for this Court to look to California State Law authorities on this subject. Whereas here, federal maritime law is incomplete and does not preempt regulation of the subject, a Federal Court may apply state law. *East River S.S. Co. v. TransAmerica DeLeval, Inc.*, 476 U.S. 858 (1986). See also *Wallis v. Princess Cruises, Inc.*, 306 F.3d 827, 841 (9th Cir. 2002) ("when new situations arise that are not directly governed by legislation or admiralty precedent, federal courts may fashion a rule for decision by a variety of methods. Federal courts may, and often do, look to state statutory law and to precepts of common law which they 'borrow' and apply as the federal

in personal injury cases "causation must be founded upon expert testimony and cannot be inferred from the jury's consideration of the totality of the circumstances unless those circumstances include the requisite expert testimony on causation." See also *Bromme v. Pavvit*, 5 Cal.App.4th 1487, 1502 (1992) ("The law is well settled that in a personal injury action causation must be proven within a reasonable medical probability based [on] competent expert testimony. Mere possibility alone is insufficient to establish a prima facie case."). Likewise, in *Jones v. Ortho Pharmaceutical Corp.*, 163 Cal.App.l3d 396, 403 (1984), the court held that expert testimony is required where the issue of causation is beyond common lay experience. In that case, the plaintiff sued the producer of oral contraceptives after she developed cancer. The court held that medical testimony was required to prove causation because cancer can be caused by any of a number of different carcinogens and "the unknown and mysterious etiology of cancer is beyond the experience of laymen and can only be explained through expert testimony." *Id.* See also *Nelson v. County of Los Angeles* (2003) 113 Cal.App.4th 783, 790-792 (holding that where injuries have multiple possible causes, expert testimony is required to establish, to a reasonable medical possibility, that the defendant's conduct caused the plaintiff's injuries).

Other courts have also held that expert testimony is required to establish causation to a reasonable medical probability because knowledge of injuries that are wholly subjective is generally beyond the common experience of the average fact finder. In *Jennings v. Polomar Pomerado Health Systems, Inc.* (2003) 114 Cal.App.4th 1108, 1118, the court held that the plaintiff must offer an expert opinion that contains a reasoned explanation illuminating why the facts have

admiralty rule.")

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

convinced the expert, and therefore should convince the jury, that it is more probable than not the negligent act was a cause-in-fact of the plaintiff's injury. Also, in *Malinson v. Black* (1948) 83 Cal.App.2d 375, 379), the court required expert medical testimony to establish both causation and damages because the plaintiff had a history of knee injuries both before and after the alleged knee injury that was the subject of the case. The court held that there was no evidence supporting plaintiff's claim that defendant's negligence caused a knee injury because plaintiff failed to proffer any expert testimony to show that the incident caused any medical injury to plaintiff. *Id.* at page 379.

### B. The Absence of Expert Testimony By Plaintiff On The Issue Of Causation is Fatal to Plaintiffs' Claims for Damages Based on the Subdural Hematoma

As the party opposing a motion for summary judgment, Plaintiffs must submit expert testimony establishing a reasonable probable causal connection between the moving party's conduct and the plaintiff's injury. *Miranda v. Bomel Construction Co., Inc.*, 187 Cal.App.4th 1326 (2010) (granting summary judgment in favor of defendant because medical expert's opinion that defendant's conduct was a possible cause of injury was not sufficient to create triable issue of material fact). See also *Jones v. Ortho Pharmaceutical Corp.*, 163 Cal.App.3d 396, 403 (1985) ("Expert testimony can enable a plaintiff's action to go to the jury only if it establishes a reasonable probable causal connection between an act and a present injury."). Testimony from an expert that there is a reasonable medical possibility is not sufficient. *Id.* See also *Simmons v. West Covina Med. Ctr.*, 212 Cal.App.3d 696, 775-776 (1989) (affirming summary judgment on the ground that a less than 50-50 probability that defendant's conduct caused the injury does not meet the requisite reasonable medical probability test of proximate cause). Inasmuch as Plaintiffs have failed

to proffer the report of any medical expert to establish causation between the incident and the subdural hematoma (suffered ten days thereafter), Plaintiffs simply cannot meet their burden of establishing a reasonable causal connection between the incident and the subdural hematoma. Moreover, and perhaps most important, Plaintiffs cannot defeat Defendants' Motion for Partial Summary Judgment absent some expert testimony on the causation issue.

Defendants fully anticipate that in response to this Motion Plaintiffs will attempt to introduce some medical theory or theories (even possibly supported by citation to Plaintiff's medical records) which if believed, might create a meaningful question of fact on the causation issue. That kind of lay speculation, however, is legally deficient in the absence of expert medical testimony – especially whereas here Plaintiff's own treating doctor refuses to provide an opinion favoring Plaintiff's causation arguments.

## V. **CONCLUSION**

Based on the foregoing, Defendants' request that the Court grant the instant Motion for Partial Summary Judgment.

DATED: January 14, 2013              KAYE, ROSE & PARTNERS, LLP


By: _/s/ Frank C. Brucculeri_
Frank C. Brucculeri, Esq.
Daniel F. Berberich, Esq.
Attorneys for MIKELSON YACHTS, INC. and BLUEWATER YACHT BUILDERS, LTD.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT