Neil B. Klein, SBN 142734
neilk@mckassonklein.com
Maria del Rocio Ashby, SBN 206282
mrashby@mckassonklein.com
Brook John Changala, SBN 245079
bchangala@mckassonklein.com
**MCKASSON & KLEIN LLP**
2211 Michelson Drive, Suite 320
Irvine, CA 92612
Tel: (949) 724-0200
Fax: (949) 724-0201

**Attorneys for:** Defendant DAVID MARQUEZ

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN CAMPBELL, an individual; and CARLOTA FRANKLIN-CAMPBELL, an individual. <br><br> Plaintiffs, <br><br> v. <br><br> WILLIAM LOGUE, an individual and as a Trustee for the Sears/Logue Revocable Trust; THE SEARS/LOGUE REVOCABLE TRUST; DAVID MARQUEZ, an individual; MIKELSON YACHTS, INC., a California Corporation; NAN YA PLASTICS CORPORATION, a Foreign Corporation; and NAN YA PLASTICS CORPORATION, a Delaware Corporation. <br><br> Defendants. <br>_____<br> AND ALL RELATED CROSS-ACTIONS | Case No. 10-CV-1821-JM-POR <br><br> Hon. David H. Bartick <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT DAVID MARQUEZ' MOTION FOR PARTIAL SUMMARY JUDGMENT** <br><br><br> The Honorable Jeffrey T. Miller <br><br> Date: February 19, 2013 <br> Time: 11:00 a.m. <br> Courtroom: 16, 5th Floor |

**DEFENDANT DAVID MARQUEZ' POINTS & AUTHORITIES IN SUPPORT OF PARTIAL SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

MEMORANDUM OF POINTS AND AUTHORITIES

   I.  INTRODUCTION ..................................................................................................1

   II. FACTS ..................................................................................................................2

   III. SUMMARY JUDGMENT STANDARD................................................................5

   IV. ARGUMENT ........................................................................................................6

      A.  Evidence of Pre-Accident Tax Returns Is Too Speculative to
         Establish Lost Income Damages.................................................................6

      B.  Alternatively, Plaintiff's Measure of Lost Income Damages Should
         Exclude Income from Pre-Accident Sale of Packeteer Stock....................8

   V. CONCLUSION....................................................................................................10

# TABLE OF AUTHORITIES

**Federal Cases**

*Abromson v. Am. Pac. Corp.,*
    114 F.3d 898, 902 (9th Cir. 1997) ....................................................................... 5

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242, 249, 250, 252 (1986) ................................................................... 5

*Celotex Corp. v. Catrett,*
    477 U.S. 317, 323 (1986) ................................................................................... 5

*C.f. Humetrix, Inc. v. Gemplus S.C.A.,*
    268 F.3d 910, 919 (9th Cir. 2001) ....................................................................... 9

*In re: Daou Sys., Inc.*
    411 F.3d 1006, 1014 (9th Cir. 2005) ................................................................... 6

*Davis v. Firestone Tire & Rubber Co.,*
    196 F.Supp. 407, 409 & Fn.6 (N.D. Cal. 1961) ................................................... 6

*Gilead Sciences Sec. Litig.,*
    536 F.3d 1049, 1055 (9th Cir. 2008) ................................................................... 6

*Lujan v. Nat'l Wildlife Fed'n,*
    497 U.S. 871, 888 (1990) ................................................................................... 5

*Matson Plastering Co., Inc. v. Plasterers and Shophands Local No. 66,*
    852 F.2d 1200, 1203 (9th Cir. 1988) ................................................................... 6

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*
    475 U.S. 574, 587 (1986) ................................................................................... 6

*Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.,*
    210 F.3d 1099, 1102 (9th Cir. 2000) ................................................................... 5

*Pearce v. U.S.,*
    261 F.3d 643, 647 (6th Cir. 2001) ....................................................................... 6

*Saldate v. Wilshire Credit Corp.,*
    686 F.Supp.2d 1051, 1062 (E.D.Cal. 2010)) ....................................................... 6

*Schybinger v. Interlake Steamship Company,*
    273 F.2d 307, 313-14 (7th Cir. 1959) .................................................................. 7

*TSE v. Ventana Medical Systems, Inc.,*
    297 F.3d 210 (3d Cir. 2002) ............................................................................... 6

Case 3:10-cv-01821-JM-DHB   Document 132-2   Filed 01/14/13   Page 4 of 14

# TABLE OF AUTHORITIES

**California Cases**

*Piscitelli v. Friedenberg,*
  87 Cal.App.4th 953, 989 (2001)..................................................................................7

*S.C. Anderson, Inc. v. Bank of America,*
  24 Cal.App.4th 529,536 (1994)...................................................................................8

**Out of State Cases**

*Cook v. Cook,*
  216 W.Va. 353, 364, 607 S.E.2d 459, 470 (2004)......................................................7

*Snow v. Villacci,*
  2000 ME 127, 754 A.2d 360, 365 ...............................................................................7

**Federal Statutes**

Fed. R. Civ. P. 56(a), (c), (e). .............................................................................................5

**Secondary Sources**

1 Thomas J. Schoenbaum, <u>Admiralty and Maritime Law</u> § 5-2,
 at 170 (3d ed. 2001) ..................................................................................................... 6

Ninth Circuit Model Civil Jury Instructions, No. 5.1 (Damages-Proof) (2007).............7

-iii-
**TABLE OF AUTHORITIES**

Defendant DAVID MARQUEZ ("Marquez") hereby submits his memorandum of points and authorities in support of his Motion for Partial Summary Judgment with respect to Plaintiff STEVEN CAMPBELL's ("Plaintiff") claim for lost income damages.

**I. INTRODUCTION**

The issue is whether Plaintiff is entitled to lost income damages due to injuries sustained in Dec 2008 while fishing on the ANDALE in Mexico. At the time of the accident, he was 67-years old and not employed. Plaintiff claims he is a "venture capitalist or angel investor" investing in start-ups, and "lost income" valued by his expert at over $2 million (about $690,000 per year) from 2009 to 2011.[1]

As support for alleged lost income, Plaintiff relies on an expert who refers to "historical income from venture capital activities" over a 5-year period (2004-2008) prior to the accident, and bases his calculations predominately on a *single venture* where Plaintiff invested in a start-up called Packeteer in 1996 that went public (Plaintiff sold Packeteer stock in 2004, 2005 & 2008 totaling about $3.8 million). However, the expert confirms Plaintiff *lost money* on other start-ups during the same period; and the evidence shows he lost money in another start-up in about 2000 (other than Packeteer, it seems he was not a particularly successful angel investor).

Plaintiff must prove lost income, the damage category asserted in his discovery responses, *with reasonable certainty, not speculation or conjecture.* First, there is no concrete evidence of lost income via lost wages, as Plaintiff has not been employed or received a paycheck since the late 1980's/early 1990's, other than board advisory fees. Second, Plaintiff's evidence in support of lost income (pre-accident tax returns) is too speculative because plaintiff cannot identify any deals, much less comparable deals, which he lost as a result of the accident. Third, relying on Packeteer stock sales would be sheer speculation – the company was founded in 1996, over 15-

---

[1] Plaintiff has not claimed lost income after 2011 or future lost earning capacity.

**DEFENDANT DAVID MARQUEZ' POINTS & AUTHORITIES IN SUPPORT OF PARTIAL SUMMARY JUDGMENT**

1  years ago, and the stock was sold, on average, a decade later in 2004, 2005 & 2008
2  respectively. Reliance on the sale of publically traded stock would be misplaced as
3  Plaintiff played no active role in the company business at that time (in effect, passive
4  income).

5  In any event, there is no evidence Plaintiff should have lost any income due to
6  the accident. Within 3-4 months, (early 2009) his own boat captain of 8-years found
7  him "one hundred percent" normal, "sharp, the same guy." Less than a year later
8  (end 2009), he was fishing, climbing up the flybridge ladder and driving his boat, no
9  mental impairment "at all" – "amazing" as described by his captain.

10 Plaintiff's lost income damages should therefore be denied, or in the alternative,
11 Packeteer sales should be ignored and lost income restricted through mid-2009.

12 **II. FACTS**

13 Plaintiff and his wife Carlota Franklin-Campbell, filed this action against Marquez,
14 William Logue and The Sears/Logue Revocable Trust (collectively "Logue"), and
15 Mikelson Yachts, Inc. and Bluewater Yachts, Ltd. (collectively "Mikelson"), after he
16 fell while sport fishing for striped marlin aboard Logue's 57' Mikelson Sportfisher off
17 the coast of Cabo San Lucas, Mexico. In the First Amended Complaint (the "FAC"),
18 Plaintiff alleges as to defendants Marquez (captain), and Logue (boat owners), that
19 their negligence "proximately caused the injuries to Campbell in an amount to be
20 proven at trial" (Ashby Decl. ¶5, Ex. A: FAC ¶¶ 27 & 32), and as to Mikelson (boat
21 manufacturer) and Bluewater (nonskid surface manufacturer), on the grounds of
22 strict product liability, that he suffered damages "in the form of **lost income**, medical
23 expenses, pain and suffering, in an amount to be proven at trial (Ashby Decl. ¶5, Ex.
24 A: FAC ¶¶ 41, 53) (emphasis added).

25 Plaintiff sometimes works as a venture capitalist or "angel investor" that invests
26 in start-ups and makes his income by selling businesses after he (and others) has
27 invested in them. (Ashby Decl. ¶6, Ex. B: Campbell Dep. 10:19-25.) In the 15-years
28 prior to the accident, Plaintiff had two significant successful investments: Stratacom

-2-
**DEFENDANT DAVID MARQUEZ' POINTS & AUTHORITIES IN SUPPORT OF PARTIAL SUMMARY JUDGMENT**

1  in the 1980s and Packeteer in the mid-1990s; (Ashby Decl. ¶6, Ex. B: 9:3-10:3;
2  Decl. ¶11, Ex. G: Porter Dep. 35:11-36:8, 36:17-37:1).

3  By the time of the accident in Dec. 2008, Plaintiff had resigned from Packeteer's
4  board of directors and was not getting paid for serving on any boards of directors.
5  (Ashby Decl. ¶7, Ex. C: Campbell Dep. 20:4-21:18.). Plaintiff does not know of any
6  specific business opportunities he missed or that he would have taken but for the
7  accident, so he has no way to quantify their value. (Ashby Decl. ¶7, Ex. C: Campbell
8  Dep. 68:8-13; 69:4-9.)

9  When the accident occurred, Plaintiff was 67-years old and recently recovered
10 from heart surgery. (Ashby Decl. ¶6, Ex. B: Campbell Dep. 7:21-23; Decl. ¶14, Ex.
11 J: Campbell Dep. 239:21-25). After the fall, he was treated for a fractured hip, a
12 post-accident acute subdural hematoma, and an infection of the hematoma wound.
13 He underwent surgery following the accident, with final surgery in June 2009 i.e. 6-
14 months after the accident, and was cleared by the orthopedic surgeon in May 2010.
15 (Ashby Decl. ¶5, Ex. A: FAC ¶¶ 21-23.)

16 He recovered fully, mentally and physically after the accident: within 3-4 months
17 (early 2009), Plaintiff's boat captain of 8-years found him "one hundred percent"
18 normal in his ability to speak and "sharp, the same guy." Less than a year after the
19 fall (end of 2009), Plaintiff was fishing, climbing up the ladder to the flybridge of his
20 60' Hatteras Sportfishing Yacht and driving the boat, with no mental impairment "at
21 all" simply "amazing" as described by his captain. (Ashby Decl. ¶8, Ex. D: Merrell
22 Dep. 47:9-48:17.).

23 In response to written discovery regarding the nature and amount of damages he
24 attributes to lost income, Plaintiff responded he "lost income as identified by his tax
25 returns" and that his lost income "will be subject of expert testimony." (Ashby Decl.
26 ¶9, Ex. E: Plaintiff's Response to William Logue Interrogatories-Set One, Nos. 16,
27 20.) Plaintiff further responded that the amount of "income or wages" attributable to
28 the incident is $2,064,894, based on a "full report" prepared by his financial losses

**DEFENDANT DAVID MARQUEZ' POINTS & AUTHORITIES IN SUPPORT OF PARTIAL SUMMARY JUDGMENT**

1  expert, as "may be adjusted or amended by his expert in this field, at time of trial."
2  (Ashby Decl. ¶10, Ex. F: Plaintiff's Response to Marquez Interrogatories-Set One,
3  Nos. 13-14.)

4  Plaintiff's financial expert, Jeffrey D. Porter, specified that Plaintiff's lost income damages are based on loss of business opportunities over a 3-year period from 2009-2011. (Ashby Decl. ¶5, Ex. A: FAC ¶¶ 27, 32, 41, 53; Decl. ¶11, Ex. G: Porter Dep. 79:4-80:24.) In his April 13th 2012 report ("Porter Report"), Mr. Porter relies on Plaintiff's tax returns over a 5-year period [2004-2008] as evidence of $2,064,894 of post-accident "lost income from venture capital activities" in 2009-2011. To calculate post-accident lost income, Mr. Porter relies largely on income generated from Plaintiff's sale of Packeteer stock in 2004, 2005 and 2008, totaling $3,804,817 (a yearly average of $760,963), and on 2004-2008 "historical annual income from venture capital activities" of $3,451,075 (yearly average of $690,215). (Ashby Decl. ¶12, Ex. H: Porter Report pp. 2-3.) Based on the Porter Report, Plaintiff lost an average of $70,748 in investment income per year [$760,963 - $690,215]. (Ashby Decl. ¶ 12, Ex. H: Porter Report p.3.)

Mr. Porter does not know whether Plaintiff received any opportunities to invest from 2008-2011 (except for a company called Pertino in 2011): he was unable to identify the number of investment opportunities that became available to Plaintiff after the June 2008 buy-out of his Packeteer interest, and could not identify any deal that Plaintiff missed out on that could have made him a profit. (Ashby Decl. ¶11, Ex. G: Porter Dep. 79:11-80:9, 82:18-84:17.) Although he asked Plaintiff for a list of his investment contacts who possibly refrained from bringing him investment opportunities in 2009 and 2010 because of his medical condition, Plaintiff did not provide any names. (Ashby Decl. ¶11, Ex. G: Porter Dep. 53:21-55:14, 55:24-56:3.) In addition, he either failed to ask for, or was not provided, any file folders or records supporting Plaintiff's claim that he researched certain companies for investment opportunities. (Ashby Decl. ¶11, Ex. G: Porter Dep. 44:11-48:9.)

-4-

**DEFENDANT DAVID MARQUEZ' POINTS & AUTHORITIES IN SUPPORT OF PARTIAL SUMMARY JUDGMENT**

Plaintiff also invested in a company in about 1999-2000 with Craig Elliott and others that went bankrupt. (Ashby Decl., ¶13, Ex. I: Elliott Dep. 128:3-9.).

### III. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each cause of action upon which the moving party seeks judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If defendant moves for summary judgment, defendant satisfies his burden by submitting evidence that disproves an element of plaintiff's claim, or by showing plaintiff does not have enough evidence on an essential element of his claim. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

Once the moving party meets its initial burden the nonmoving party must set out specific facts showing a genuine issue for trial in order to defeat the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); see also Fed. R. Civ. P. 56(c), (e). The nonmoving party may not rest on mere allegations or denials of the pleadings, but must present sufficient evidence favoring the non-moving party for a jury to return a verdict in favor of that party. *Id.* at 249. A "mere existence of a scintilla of evidence in support of plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252; *Lujan v. Nat'l Wildlife Fed'n.*, 497 U.S. 871, 888 (1990) (nonmoving party must do more than make "conclusory allegations [in] an affidavit").

Summary judgment must be granted if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322; *Abromson v. Am. Pac. Corp.*, 114 F.3d 898, 902 (9th Cir. 1997). Summary judgment for the moving party is proper when a rational trier of fact would not be able to find

1 for the nonmoving party on the claims at issue. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).

## IV. ARGUMENT

### A. Evidence of Lost Income Is Too Speculative To Support Actual Damages

The elements of a negligence claim in admiralty, "essentially the same as land based negligence under common law, are: "(1) the existence of a duty of care owed by the defendant to the plaintiff; 2) the breach of that duty; 3) proximate cause, and 4) **actual loss, injury or damage suffered by the plaintiff**. *Pearce v. U.S.*, 261 F.3d 643, 647 (6th Cir. 2001), citing 1 Thomas J. *648 Schoenbaum, Admiralty and Maritime Law § 5-2, at 170 (3d ed.2001) (footnotes omitted); see also *Saldate v. Wilshire Credit Corp.*, 686 F.Supp.2d 1051, 1062 (E.D.Cal. 2010) (California negligence claim).

"A plaintiff bears the burden of proving that a defendant's alleged unlawful act 'caused the loss for which the plaintiff seeks to recover damages.'" *In re Gilead Sciences Sec. Litig.,* 536 F.3d 1049, 1055 (9th Cir. 2008) *quoting In re Daou Sys., Inc.*, 411 F.3d 1006, 1014 (9th Cir.2005). On damages, as with other elements of negligence, Plaintiff has the burden of proof, and the mere possibility of damages, or pure speculation or conjecture, are not enough to satisfy that burden. *Davis v. Firestone Tire & Rubber Co.*, 196 F.Supp. 407, 409 & Fn.6 (N.D. Cal. 1961) (re causation in directed verdict case).

Lost opportunity damages account for loss of "a possible profit or benefit." *TSE v. Ventana Medical Systems, Inc.*, 297 F.3d 210 (3d Cir. 2002). However, they are not available where existence of the loss is "wholly speculative." *Id*; *Matson Plastering Co., Inc. v. Plasterers and Shophands Local No. 66*, 852 F.2d 1200 (9th Cir. 1988). In *Matson Plastering*, an employer sought rescission of a collective bargaining agreement and damages for lost profits due to lost opportunity to bid on subsequent contract. The 9th Circuit affirmed the District Court's rejection of the lost profits claim,

//

noting that because the employer did not bid on the subsequent contracts, lost opportunity damages were not **reasonably certain**. *Id.* at 1203.

The requirement that lost income damages must be reasonably certain and not based upon speculation, guesswork, or conjecture applies equally in tort actions, including maritime cases. See Ninth Circuit Model Civil Jury Instructions, No. 5.1 (Damages-Proof) (2007); *Schybinger v. Interlake Steamship Company*, 273 F.2d 307, 313-14 (7th Cir. 1959) (loss of income damages in maritime case must be reasonably certain). *Piscitelli v. Friedenberg* (2001) 87 Cal.App.4th 953, 989 (speculative, remote, imaginary, contingent, or merely possible damages cannot serve as a legal basis for recovery; damages must be reasonably certain to have been realized but for the wrongful act).[2]

Here, Plaintiff has not identified evidence of income that he would have gained but for the accident, and cannot point to any business opportunities he missed or that he would have taken. Except for Pertino, Plaintiff's expert does not know what, if any, investment opportunities were available to Plaintiff in 2008-2011, even after the June 2008 buy-out of Plaintiff's Packeteer interest. Plaintiff's expert was never provided a list of Plaintiff's investment contacts to determine if any of them refrained from approaching plaintiff for business due to the accident. Plaintiff's expert was not even able to confirm whether Plaintiff researched companies for investment opportunities.

Instead, Plaintiff's evidence in support of 2009-2011 lost income is based on five years of pre-accident tax returns (2004-2008), which according to Plaintiff are indicative of his normal investment activity. Relying on those returns, Plaintiff's

---

[2] Other jurisdictions are in accord in requiring evidence of more than a prospect for purposes of lost income. See e.g. *Snow v. Villacci*, 2000 ME 127, 754 A.2d 360, 365 (loss of earning opportunity requires showing, by preponderance of evidence, that (i) opportunity was real and not merely hoped-for prospect; (ii) opportunity was available not just to public in general but to plaintiff specifically; (iii) plaintiff was in position to take advantage of opportunity; (iv) income from opportunity was measurable and demonstrable; and (v) negligent actor was a proximate cause of plaintiff's inability to pursue such opportunity); *Cook v. Cook,* 216 W.Va. 353, 364, 607 S.E.2d 459, 470 (2004) (same).

-7-

**DEFENDANT DAVID MARQUEZ' POINTS & AUTHORITIES IN SUPPORT OF PARTIAL SUMMARY JUDGMENT**

expert concluded Plaintiff had a "5-year historical income from venture capital activities" at an average of $690K per year, which included Packeteer stock sales in 2004, 2005 and 2008, after deduction of $70K in <u>losses</u> in Plaintiff's investment activities during the same 5-years.

However, Plaintiff's exclusive reliance on prior tax returns and stock sales income, without any evidence linking those income sources to comparable investment and income lost in 2009-2011, is too remote and conjectural to satisfy Plaintiff's burden of proving actual damages with reasonable certainty. Specifically, since Plaintiff's lost income damages are based on Mr. Porter's report, and Mr. Porter did not rely on any identifiable deal or investment which Plaintiff pursued and lost in 2009-2011 due to the injury, Plaintiff cannot establish lost income (or lost opportunity) damages with any degree of reasonable certainty. *S.C. Anderson, Inc. v. Bank of America*, 24 Cal.App.4th 529,536 (1994) (many variables could affect ability to invest in projects and their profitability).

Moreover, Plaintiff's last surgery was in June 2009 (and Plaintiff was cleared by an orthopedic surgeon in May 2010). Within 3-4 months after the accident (early 2009), his captain of 8-years considered Plaintiff "one hundred percent" normal, "sharp, the same guy." By the end of 2009, the captain witnessed Plaintiff fishing, climbing to the flybridge of his 60' Yacht and driving the boat, with no mental impairment at all, and in his words "amazing."

Based on this testimony, and in light of the speculative evidence supporting Plaintiff's alleged 2009-2011 loss of income, Plaintiff cannot establish the element of damages with respect to lost income to the requisite degree of certainty. Partial summary judgment is therefore proper.

**B. Alternatively, Plaintiff's Measure of Lost Income Damages Should Exclude Pre-Accident Sale Of Packeteer Stock**

As noted above, Plaintiff contends his sale of Packeteer stock in 2004, 2005 and 2008 is evidence of lost income in 2009-2011 attributable to the accident. However,

1   by the time of the Dec 2008 accident, 12 years had passed since Plaintiff's original
2   investment in Packeteer, and he no longer served on its board of directors. As a
3   result, the approximately $2 million loss of income figure reached by Plaintiff's
4   expert based on Plaintiff's pre-accident sale of $3.8 million of Packeteer stock is
5   misleading.

6   There was no investment either in the works or lost by Plaintiff for which Plaintiff's
7   $3,804,817 Packeteer stock sales could serve as a reasonably certain comparable
8   measure of 2009-2011 lost income damages. And although Plaintiff customarily
9   generated investment opportunities from his accumulated investment contacts, he
10  was unable to give his expert the names of <u>any</u> contacts who may have refrained
11  from approaching him for business due to his injuries. Plaintiff has not identified any
12  other evidence that might support wholesale reliance of the sale of his stock: i.e., no
13  similar deals, no similarly situated investors, and no similar investment climate. C.f.
14  *Humetrix, Inc. v. Gemplus S.C.A.*, 268 F.3d 910, 919 (9th Cir. 2001) (lost profits
15  damages awarded based on existence identifiable indicators, including pilot
16  projects, contracts negotiations at time of breach; success record and existence of
17  ascertainable relationship).

18  Finally, there is no evidence that Plaintiff was unable to continue his normal
19  investment activities after mid-2009, thereby mitigating his damages. As a result, a
20  lost income calculation that relies on Plaintiff's pre-accident sale of Packeteer stock
21  would require a high degree of conjecture as to an unknown investment with
22  unknown third parties, with assumptions on numerous variables that could affect
23  investment results.

24  Consequently, evidence of Plaintiff's pre-accident Packeteer stock sales should
25  be excluded as a measure of post-accident lost income damages, and Plaintiff's lost
26  income measure restricted to provable lost income through approximately mid-2009.
27  //
28  //

-9-

**DEFENDANT DAVID MARQUEZ' POINTS & AUTHORITIES IN SUPPORT OF PARTIAL SUMMARY JUDGMENT**

## V. CONCLUSION

Based on the foregoing, Defendant Marquez respectfully requests that the Court grant his motion for partial summary judgment as to Plaintiff's lost income damages claim. In that alternative, Defendant requests that the Court exclude Plaintiff's pre-accident income from sales of Packeteer stock from Plaintiff's measure of alleged lost income damages, and/or that Plaintiff's potential recovery of lost income be cut off at approximately mid-2009.

Date: January 14, 2013

        /s/ *Neil B. Klein*
Neil B. Klein
Maria del Rocio Ashby
Brook John Changala
**MCKASSON & KLEIN LLP**
Attorneys for Defendant
DAVID MARQUEZ

**DEFENDANT DAVID MARQUEZ' POINTS & AUTHORITIES IN SUPPORT OF PARTIAL SUMMARY JUDGMENT**