G. GEOFFREY ROBB  (131515)
CHELSEA D. YUAN  (240559)
DIANA CASTIOV (280467)
GIBSON ROBB & LINDH LLP
201 Mission Street, Suite 2700
San Francisco, California  94105
Telephone: (415) 348-6000
Facsimile:  (415) 348-6001
Email:      grobb@gibsonrobb.com
            cyuan@gibsonrobb.com
            dcastiov@gibsonrobb.com

Attorneys for Defendants
WILLIAM LOGUE and
THE SEARS/LOGUE REVOCABLE TRUST

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| STEVEN CAMPBELL, an individual; and CARLOTA FRANKLIN-CAMPBELL, an individual. <br><br> Plaintiffs, <br><br> v. <br><br> WILLIAM LOGUE, an individual and as a Trustee for the Sears/Logue Revocable Trust; THE SEARS/LOGUE REVOCABLE TRUST; DAVID MARQUEZ, an individual; MIKELSON YACHTS, INC., a California Corporation; NAN YA PLASTICS CORPORATION, a Foreign Corporation; and NAN YA PLASTICS CORPORATION, a Delaware Corporation. <br><br> Defendants. | Case No.  **10-CV-1821-JM (DHB)** <br><br> **DEFENDANTS WILLIAM LOGUE AND THE SEARS/LOGUE REVOCABLE TRUST'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW** <br><br><br> **Judge:**      **Hon. Jeffrey T. Miller** <br><br> Trial Date:    March 25, 2013 |
| AND ALL RELATED CROSS-ACTIONS |  |

## I.   <u>LOGUE DEFENDANTS' STATE MENT OF MATERIAL FACTS</u>

### A.     <u>Incident</u>

1.       On December 7, 2008, Steven Campbell ("Plaintiff") fell while fishing for striped marlin on the bow of Defendant William Logue's boat in the open ocean near Cabo San Lucas,

Mexico. (Deposition of Plaintiff Steven Campbell, Vol. 1, April 28, 2011 (hereinafter "Campbell Depo. Vol. 1") at: 103:10-15; 103:24-104:2); (Deposition of Defendant William Logue (hereinafter "Logue Depo.") at 75:18-22)

2. Plaintiff, a tournament-level marlin fisherman, was sixty-seven (67) years old at the time of his fall and was recovering from recent heart surgery a few months prior to his fall, when he had five stents placed. (Campbell Depo. Vol. 1, 7:21-23, 25:6-9, 25:21-23, 98:7-11, 135:15-19; Deposition of Plaintiff Steven Campbell, Vol. 3, March 8, 2012 (hereinafter "Campbell Depo. Vol. 3") at 239:21-25)

3. Plaintiff owns his own sports fishing boat in Cabo San Lucas and had been fishing on Logue's boat with Logue's captain, David Marquez, on at least eight to ten separate occasions and had no complaints as to the upkeep of the surface of the boat or the Captain's maneuvering. (Campbell Vol 1: 17:24-19:11, 45:25-46:4, 46:16-18, 47:3-48:25)

4. Plaintiff knew it was more dangerous to fish from the bow than the cockpit (rear of the boat) and that there is a greater risk of falling on the bow than the cockpit. (Campbell Depo. Vol 1, 108:17-23, 134:17-135:14)

5. Despite knowing about the increased risk, Plaintiff prefers to cast from the bow. (Campbell Depo. Vol 1, 36:4-11, 41:16-43:3)

6. Logue does not fish from the bow of the vessel because it is too dangerous. (Logue Depo., 49:3-12, 52:22-25)

7. The fall occurred in the afternoon on the final day of a week of "epic" sports fishing, wherein Logue, Plaintiff, and their friend Robert Garavello fished several days in a row, alternating between Logue's boat and Plaintiff's boat. (Campbell Depo. Vol. 1, 102:12-20); Logue Depo., 66:9-14; 69:21-70:21; Deposition of Robert Garavello (hereinafter "Garavello Depo.") at 21:25-22:4; 36:9-24; 46:12-19; 132:10-15)

8. Plaintiff's fall happened after at least four and a half hours of striped marlin sports fishing. (Campbell Depo. Vol. 1, 103:6-11, 124:10-13)

9. Striped marlin fishing in open ocean is an aggressive and dangerous sport and is especially dangerous on the bow. (Deposition of William Merrell, Vol. 2, January 4, 2013

1  (hereinafter "Merrell Depo. Vol. 2") at 30:24-31:13, 31:21-34:6)(Deposition of Harvey

2  Hunnicutt, July 30, 2012 (hereinafter "Hunnicutt Depo.,") at 23:5-25:5)

3      10.    Plaintiff was visibly tired on the day of his fall.  (Deposition of Andy Marquez,

4  Vol. 1, March 14, 2011 (hereinafter "Andy Marquez Depo. Vol. 1") at 31:11-13; Logue Depo.,

5  72:22-73:6, 79:14-22; Deposition of David Marquez (hereinafter "David Marquez Depo.") at

6  132:9-12; Garavello Depo., 36:9-24)

7      11.    Immediately before he fell, Plaintiff cast his reel from the bow and failed to hook

8  a striped marlin.  (Campbell Depo. Vol. 1, 84:3-16; Andy Marquez Depo. Vol. 1, 20:8-22;

9  Deposition of Andy Marquez, Vol. 2, March 15, 2011 (hereinafter "Andy Marquez Depo. Vol.

10  2") at 83:14-17)

11     12.    Plaintiff was moving across the bow towards the stern, holding a fishing rod in

12  one hand, and not holding the railing immediately prior to his fall.  (Campbell Depo. Vol. 1,

13  70:12-71:23; 76:6-8; 84:3-16; Andy Marquez Depo. Vol. 1, at 20:8-22; Andy Marquez Depo

14  Vol. 2, 83:14-17)

15     13.    Plaintiff admitted that he could have held the railing while he was casting on the

16  bow immediately before he fell, but he was "just trying to get over here [where the marlin were]."

17  (Campbell Depo. Vol. 1, 76:1-77:7)

18     14.    If Plaintiff had been holding the railing, his fall would have been less likely.

19  (Campbell, 1: 127:18-20)

20     15.    Falls occur because someone cannot recover from a loss of balance.  (Brad M.

21  Wong, P.E., Report, at p. 3-4)

22     16.    The "heel strike" of the shoes Plaintiff wore on the date of his fall were worn out.

23  (Michael M Sampsel Report at p. 6 and photograph 3 at p. 10)

24     17.    A fall and inability to recover typically involve multiple factors.  (Brad M. Wong,

25  P.E., Report, at p. 3-4)  Plaintiff lost his balance due to the following factors: Plaintiff was

26  moving across the deck focusing on the bait ball; Plaintiff was not attentive to his safety; there

27  was unavoidable movement of the ANDALE in the open ocean.  (Andy Marquez Depo.,

28  136:25-137:4); (Campbell Depo. Vol. 1, 70:12-71:23; 76:6-8; 84:3-16; Andy Marquez Depo.

Vol. 1, at 20:8-22; Andy Marquez Depo Vol. 2, 83:14-17)  Plaintiff was unable to recover from his fall due to his age, physical condition, fatigue from 5 days of "epic" fishing, worn out heel strike of his shoes, and his failure to hang on to the railing.  (Campbell Depo. Vol. 1, 7:21-23; 70:12-71:23; 76:6-8; 84:3-16; 98:7-11; Deposition of Plaintiff Steven Campbell, Vol. 3, March 8, 2012 (hereinafter "Campbell Depo. Vol. 3") at 239:21-25); (Andy Marquez Depo. Vol. 1, 20:8-22; 31:11-13; 20:8-22; Andy Marquez Depo Vol. 2, 83:14-17); (Logue Depo., 72:22-73:6, 79:14-22); (David Marquez Depo., 132:9-12); (Garavello Depo., 36:9-24); (Michael M Sampsel Report at p. 6 and photograph 3 at p. 10)

### B. Medical Treatment

18.     Plaintiff was flown to San Diego for medical treatment the day after his fall, where he was treated for his fractured hip at Scripps Memorial Hospital in La Jolla, CA. (Campbell Depo Vol. 1, 93:16-20) (Campbell Depo Vol. 3, 118:2-7, 122:7-22) (Scripps Memorial Hospital La Jolla Subpoenaed Records, pp 50-51, et seq.)

19.     Approximately two weeks into his hospital treatment, Plaintiff began to suffer from an "acute" subdural hematoma ("active bleeding" in the brain).  (Campbell Depo Vol. 3, 122:23-123:5) (Scripps Memorial Hospital La Jolla Subpoenaed Records, pp 289-291) (Deposition of Scott Leary, M.D., July 23, 2012 (hereinafter "Leary Depo.") at 16:7-22)

20.     An "acute" subdural hematoma began 12-24 hours before discovery.  (Leary Depo., 15:25-16:9)

21.     Plaintiff's hematoma was caused by his anti-coagulation medications for his heart condition preceding his fall.  (Lobatz report, p. 8); (Leary Depo., 17:2-19:1; Exhibit U to Leary Depo.)

22.     Had Plaintiff's subdural hematoma been related to Plaintiff's fall, the symptoms would have developed at a much earlier date. (Lobatz report, p. 8)

23.     Plaintiff did not hit his head when he fell aboard the ANDALE.  (Andy Marquez Depo. Vol. 1, 24:13-17) (Dr. Michael A. Lobatz (expert neurologist) Report, at p. 7-8)  Plaintiff was examined at a medical facility in Mexico and in San Diego.  Neither found that Plaintiff hit his head or that he suffered any head trauma, including any bumps or bruises.  (BlueMedicalNet,

Voluntary Release Report dated 8/12/2008); (Scripps La Jolla Emergency Record, dated 18/08/08 by Doctor Martin Griglack, specifically states "did not hit his head.")

24.    Plaintiff was treated for the hematoma and discharged to Scripps Memorial Hospital in Encinitas, CA for rehabilitation related to both the hip fracture and hematoma. (Campbell Depo Vol. 3, 123:1-17, 125:24-126:11) (Scripps Memorial Hospital Encinitas Subpoenaed Records, pp 143-146) (Scripps Memorial Hospital La Jolla Subpoenaed Records, pp 319-320)

25.    Plaintiff was then discharged from rehabilitation treatment after eleven days. (Campbell Depo Vol. 3, 125:4-22) (Scripps Memorial Hospital Encinitas Subpoenaed Records, pp 71-73)

26.    Plaintiff was subsequently discharged from care for his hip in May 2010. (Dr. Robert Tonks Subpoenaed Medical Records, p 14)

27.    Plaintiff visited his treating orthopedic surgeon once in 2011 and once in 2012. (Campbell Depo Vol. 3, 213:23-214:8) (Dr. Robert Tonks Subpoenaed Medical Records, p 7)

28.    Defendants' orthopedic expert personally evaluated Plaintiff in November 2011, three years post-incident, and found no indication of post-traumatic arthritis or need for further surgery. (Dr. William Bowman IME Report, Nov. 10, 2011, p. 8)

29.    Plaintiff was treated in February 2009 for an infection of the subdural hematoma surgical wound and then discharged from care for the hematoma in January 2010 with no recommendations for future medical care. (Campbell Depo Vol. 3, 136:18-137:9, 213:23-214:8) (Scripps Memorial Hospital La Jolla Subpoenaed Records, pp 817-818) (Senta Clinic Subpoenaed Records, p 18)

30.    Plaintiff has made a full recovery from his fractured hip. (Dr. Robert Tonks Subpoenaed Medical Records, p 14)

31.    As of June 2012, Plaintiff did not need a total hip replacement. (Deposition of Robert Tonks, M.D., (hereinafter "Tonks Depo.") at 12:11-23)

32.    Plaintiff has made a full recovery from his hematoma. (Senta Clinic Subpoenaed Records, p 18)

33.     Plaintiff resumed playing golf in May 2009 and was playing full eighteen rounds by September 2009.  (Campbell Depo. Vol. 1: 9: 18-25; 10: 1-25; 11: 1-25; 12: 1-10; Campbell Depo Vol. 3, 180:8-14, 182:10-184:11) (Sharp Grossmont Hospital Subpoenaed Records, pp 26-29); (SENTA Medical Clinic Intake Form, Leary Bate Stamp No. 000004; Inpatient Facesheet - Scripps Health, Leary Bate Stamp No. 000005)

34.     Plaintiff was retired at the time of his fall, but dabbled in technology investments. (SENTA Medical Clinic Intake Form, Leary Bate Stamp No. 000004; Inpatient Facesheet - Scripps Health, Leary Bate Stamp No. 000005); (Campbell Depo. Vol. 1: 9: 18-25; 10: 1-25; 11: 1-25; 12: 1-10)

35.     Plaintiff returned to investment activities as early as March 17, 2009.  (Campbell Depo. Vol. 3, 151:20-152:2l; Exhibit 43 to Plaintiff's Deposition (from February 8, 2012))

**C.     Liability Issues**

36.     On August 31, 2010, Plaintiffs filed suit against William Logue and the Sears/Logue Recovable Trust as the owners of the boat, as well as Captain David Marquez, the captain at the time of the incident, and Mickelson Yachts, the manufacturer of the ANDALE. (Plaintiffs' Complaint)

37.     Plaintiffs subsequently amended their complaint on July 20, 2011, adding Bluewater Yacht Builders, the manufacturer of the nonskid surface of the bow of the ANDALE, Ya Plastics Corporation, and Nan Ya Plastics Corporation, as additional defendants. (Plaintiffs' First Amended Complaint).

38.     Plaintiffs' initial complaint filed in August 2010 alleged that "the ANDALE went underway aggressively, which caused the ANDALE to take a wave over the bow and the fore deck was thoroughly awash."  (Plaintiffs' Complaint, paragraph 13)

39.     The complaint further alleged that "Campbell and the Mate then headed aft, but again without warning and before they could get off the bow, the ANDALE went into a stop or reverse, knocking Campbell and the Mate down."  (Plaintiffs' Complaint, paragraph 13)

40.     Plaintiffs subsequently amended their complaint on July 20, 2011, changing their story to allege that Plaintiff "was reaching for the railing on the starboard side of the foredeck

when, without warning, the ANDALE went underway aggressively, knocking Campbell down."
(Plaintiffs' First Amended Complaint, paragraph 13)

41.     The First Amended Complaint makes no mention of any wave coming over the bow or that the fore deck was thoroughly awash, nor does it allege that the "Mate," Andy Marquez, was knocked down.  (Plaintiffs' First Amended Complaint)

42.     Andy Marquez was standing near Plaintiff at the time of Plaintiff's fall.  (Andy Marquez Depo., 9:7-13)

43.     Andy Marquez did not fall.  (Campbell Depo. Vol. 1, 82:2-83:7)

44.     Plaintiffs' current allegations against Logue and the Trust are (1) that Defendants failed to warn Plaintiff that the that the boat was unnecessarily slippery and (2) that Captain Marquez maneuvered the boat in an abrupt and unexpected way causing Plaintiff to fall.  (First Amended Complaint; Response to the Sears/Logue Revocable Trust's Interrogatories to Plaintiff Steven Campbell, Response No. 2 (Set One))

45.     There was no problem with the surface of the bow of the ANDALE on the date of Plaintiff's fall.  (Campbell Depo Vol. 1, 53:11-16; Garavello Depo., 101:5-7)

46.     Logue owned the ANDALE for four years and never received any complaints about the surface of the boat .  (Logue Depo., 18:3-19:5, 48:16-49:2, 165:6-11; Garavello Depo., 74:4-10; David Marquez Depo., 57:20-58:7, 138:3-7)

47.     No one else has ever fallen on the ANDALE.  (Andy Marquez Depo., Vol. 2, 91:10-15; Logue Depo., 49:13-17; David Marquez Depo, 40:12-18)

48.     Minutes before his fall, Plaintiff walked over the very same area where his fall occurred, on the starboard side of the vessel.  (Campbell Depo. Vol 1, 70:12-71:23, 74:21-75:9, Exhibit 10.)

49.     Robert Garavello also fished from the bow on the date of the accident and did not find it slippery. (Garavello Depo., 100:22-25; 101: 5-7)

50.     Plaintiff cast from the bow of the ANDALE at least two to three times the week of his accident, including one time approximately half an hour prior to his fall.  (Campbell Depo. Vol. 1, 49:7-23, 52:15-23.)

51. The deck was not slippery on the date of Plaintiff's fall, prior to Plaintiff's fall. (Campbell Depo Vol. 1, 53:11-16; Garavello Depo., 101:5-7)

52. No one in the fishing party complained about the ANDALE prior to Plaintiff's fall. (Campbell Depo. Vol. 1: 45:25-46:4, 46:16-18, 47:3-48:25; Andy: 91:13-15; Garavello: 78:8-79:1; 101: 5-7; Logue: 63:19-64:9; Logue: 48:16-49:2; David: 57:20-58:70; 138:3-7)

53. Plaintiff is the only person aboard the ANDALE on December 7, 2008, to claim (speculatively) that Captain Marquez maneuvered the ANDALE at the time of his fall in such a way as to cause the boat to move aggressively and violently. (First Amended Complaint) (Plaintiff's Response to the Sears/Logue Revocable Trust's Interrogatories (Set One), Interrogatory No. 1); (Campbell Depo. Vol. 1: 77:18-21; 107:11-14; 109:22-110:1)

54. There were four other people aboard the ANDALE during Plaintiff's fall. (Campbell Depo. Vol. 1: 61:4-62:2)

55. Andy Marquez was standing next to Plaintiff at the time of Plaintiff's fall. (Andy Marquez Depo. Vol. 1, 19:7-13)

56. Logue and Garavello were at the back of the boat. (Campbell Depo. Vol. 1, 69:1-3; Andy Marquez Depo. Vol. 1, 19:25-20:2; Andy Marquez Depo. Vol. 2, 65:22-24; Logue Depo., 78:3-8, 78:14-16; David Marquez Depo., 61:8-12; Garavello Depo., 50:18-22.)

57. Garavello was in the cockpit, where he could hear if the boat's engines were revved up or engaged. (Garavello Depo., 55:3-24.)

58. Captain Marquez was on the bridge of the boat at the controls. (Campbell Depo. Vol. 1, 69: 7-14; Andy Marquez Depo. Vol. 2, 63:14-25; Logue Depo., 127:11-18; David Marquez Depo., 61:2-4.)

59. All of the other passengers aboard the ANDALE testified that Captain Marquez did not operate the boat aggressively or violently at or near the time of Plaintiff's fall. (Andy Marquez Depo. Vol. 2, 136:7-10; Garavello Depo., 54:18-24, 55:16-23, 115:7-10; Andy Marquez Depo. Vol. 1, 28:13-15, 35:8-11; David Marquez Depo., 114:12-16, 114:24-115:1; Logue Depo., 50:22-51:2.)

/ / /

60. The engines of the ANDALE were likely not engaged at or around the time of Plaintiff's fall. (Garavello Depo., 55:3-6; 55:3-24)

61. Even if the boat's engines were engaged at the time of Plaintiff's fall, Captain Marquez did not maneuver the boat or accelerate in any abrupt or violent way that would have caused Plaintiff's fall. (Andy Marquez Depo. Vol. 1, 28:13-15, 35:8-11; Andy Marquez Depo. Vol. 2, 136:7-10; Garavello Depo. 54:18-24, 55:16-23, 73: 23-25, 115:7-10; Logue Depo., 50:22-51:2; David Marquez Depo., 114:12-16, 114:24-115:1.)

**D.** **Damages Issues**

62. On October 9, 2008 (two months before Plaintiff's fall on the ANDALE), Plaintiff was admitted to Scripps Green Hospital/Medical Facility for a myocardial infarction (heart attack) and angina (cardiac related chest pain). He underwent a stenting procedure at that time. (Lobatz's Expert Report, Record Review, at paragraph 6)

63. Plaintiff's subdural hematoma was not caused by the accident (Lobatz report, p.8)

64. Plaintiffs do not have an expert neurologist to testify at trial to establish causation between Plaintiff's fall and his subsequent subdural hematoma. (Plaintiff's Initial Designation of Experts, Plaintiffs' Rebuttal Designation of Experts)

65. Plaintiff has made a full recovery regarding his fractured hip and there is no indication that he will need a full hip replacement. (Tonks Depo., 12:11-23; Dr. Robert Tonks Subpoenaed Medical Records, p 14)

66. Plaintiff has also made a full recovery regarding his subdural hematoma, with no indication of any need for future medical care. (Senta Clinic Subpoenaed Records, p 18)

67. The majority of Plaintiff's past medical expenses were paid by Medicare and private insurance. (Bills and Payment Summaries (fracture + hematoma)). The parties are stipulating as to amounts.

68. Plaintiff, Medicare, and Plaintiff's insurers paid approximately $92,961 for treatment of Plaintiff's fractured hip. (Bills and Payment Summaries (fracture)). The parties are stipulating as to amounts.

/ / /

69. Plaintiff, Medicare, and Plaintiff's insurers paid approximately $83,977 for treatment of Plaintiff's subdural hematoma. (Bills and Payment Summaries (hematoma)). The parties are stipulating as to amounts.

70. Plaintiff was retired at the time of the incident. (SENTA Medical Clinic Intake Form, Leary Bate Stamp No. 000004; Inpatient Facesheet - Scripps Health, Leary Bate Stamp No. 000005; Campbell Depo. Vol. 1: 9: 18-25; 10: 1-25; 11: 1-25; 12: 1-10)

71. Although Plaintiff dabbled in technology investments, he cannot point to any investments he lost out on because of his fall. (Campbell Depo, Vol II: 20: 4-25; 21: 1-21; 68:8-13; 69:4-9)

72. Plaintiff does not know of any specific business opportunities he missed or that he would have taken but for the accident. (Campbell Depo. Vol 1, 68:8-13; 69:4-9)

73. Plaintiff was unable to give his expert the names of any contacts who may have refrained from approaching him for business due to his injuries. (Deposition of Jeffrey Porter, August 2, 2012, (hereinafter "Porter Depo.,") at 53:21-25; 54: 1-25; 55: 1-14; 84: 7-17)

74. Plaintiff lost money on all limited investments during his retirement other than the money he earned from the sale of stock, accumulated during employment years before. (Kim Joseph Onisko Expert Report, dated May 1, 2012, pp. 2-3)

75. Plaintiff's boat captain of eight years testified that Plaintiff recovered fully mentally and physically after the accident within 3-4 months. Captain Merrell testified that Plaintiff was "one hundred percent" normal in his ability to speak and "sharp, the same guy." (Merrell Depo., 47:9-48:17). Merrell further testified that Plaintiff was fishing, climbing up the ladder to the flybridge of his 60' Hatteras Sport fishing Yacht and driving the boat, with no mental impairment "at all" and simply "amazing." (Merrell Depo., 47:9-48:17)

76. Plaintiff was investing substantial sums of money in start-up companies as early as March 2009, a mere three months after the incident. (Campbell Depo, Vol 2, 43: 23-44:1; 47: 11-17; 53: 12-16; Questionnaire TAC Financial (Ex. 43)

/ / /

/ / /

1     77.    Plaintiff's tax returns only show passive investment income, most of which came

2  from the sold stock holdings he acquired in companies he had worked for prior to the incident.

3  (Kim Joseph Onisko Expert Report, dated May 1, 2012, pp. 2-3)

4     78.    Plaintiff employed a private home care assistant for approximately one month

5  following her husband's release from the rehabilitation hospital. (Deposition of Carlota

6  Franklin-Campbell, February 8, 2012 (hereinafter "Carlota Campbell Depo.") at 74:12- 75:15)

7     79.    Plaintiffs also subsequently hired a personal trainer. (Campbell Depo Vol. 3: 106:

8  8-15; 161:25-162:5; 168: 24-25; 169: 1-7; 170: 4-12; 172: 23-25; 173: 1-9)

9     80.    Plaintiffs already employed a live-in gardener and housekeeper prior to Plaintiff's

10  fall. (Carlota Campbell Depo., 68:10-69:9)

**E.    <u>Limitation Act Issues</u>**

12     81.    David Marquez was the captain of the ANDALE. (David Marquez Depo., 45:2-

13  6)

14     82.    Captain Marquez is a licensed captain with approximately twenty years of

15  experience, who has worked on several yachts. (David Marquez Depo., 10:11-11:5; 13:15-

16  15:20; 25:15-24)

17     83.    Captain Marquez received boat safety training and had full responsibility of

18  maintaining several yachts, including the ANDALE. (David Marquez Depo., 16:24-17:24,

19  20:12-21:14)

20     84.    Captain Marquez supervised the first mate and deckhand on the ANDALE, Andy

21  Marquez. (David Marquez Depo., 21:15-22:4; Andy Marquez Depo. Vol. 1, 8:23-24, 19:7-13,

22  21:1-2; Andy Marquez Depo. Vol. 2, 75:8-12)

23     85.    Captain Marquez has never had any complaints lodged against him with respect to

24  his captaining of any vessels. (David Marquez Depo., 19:17-21)

25     86.    Each of Captain Marquez's decisions in locating the marlin for the fishing party

26  to catch on the date of the incident was a decision made by Captain Marquez within his

27  navigational responsibilities and his professional judgment as a licensed captain. (David Marquez

28  Depo., 34:24-35:4, 35:12-19.)

87. Captain Marquez was operating the boat at the time of Plaintiff's fall and made a discretionary navigational decision on his own and not at the instruction of William Logue. (David Marquez Depo., 34:24-35:4, 35:12-19)

88. Logue trusted Captain Marquez to make navigational decisions on his own. (Logue Depo., 52:3-8)

89. Operating the ANDALE to locate marlin and assist the fishing party to cast and hook and bring in marlin was an activity within the captain's professional duties. (David Marquez Depo., 46:2-5.)

90. William Logue by and through the Sears/Logue Revokable Trust owned the ANDALE at the time of the incident. (Logue Depo., 18:3-7.)

91. The accident happened on ocean waters near Cabo San Lucas, Mexico. (Campbell Depo. Vol. 1, 104:9-12.)

92. William Logue sold the ANDALE in March of 2011 for $776,000.00. (Logue Depo, 165:6-11) (Logue Defendants' pretrial disclosures, LOG-0026-LOG0036)

## II.    LOGUE DEFENDANTS' CONTENTIONS OF LAW

### A.    Lack of Breach of Duty

1. The legal standard for the boat owner's duty of care is "one of reasonable care under the circumstances." *Monteleone v. Bahama Cruise Line*, 838 F.2d 63 (2d Cir. 1988).

2. A boat owner is not an insurer of its passengers' safety, therefore some failure to exercise due care is required before liability may be imposed. *Monteleone v. Bahama Cruise Line*, 838 F.2d 63 (2d Cir. 1988).

3. "In addition, a [boat/]shipowner is responsible for defective conditions aboard ship only when [he] has actual or constructive notice of them." *Monteleone v. Bahama Cruise Line*, 838 F.2d 63 (2d Cir. 1988).

### B.    Comparative Fault

4. General maritime law recognizes the doctrine of comparative negligence. *See e.g. Doty v. U.S.*, 508 F. Supp. 250 (N.D. Ill. 1981); *Wiles v. Delta S.S. Lines, Inc.*, 574 F.2d 1338, 1978 (1978); *Mazzanti v. Lykes Bros. S.S. Co., Inc.*, 524 F.2d 961 (1975).

DEFENDANTS WILLIAM LOGUE AND THE SEARS/LOGUE REVOCABLE TRUST'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW
Case No. 10-CV-1821-JM (DHB); Our File No. 8002.78

- 12 -

5. The doctrine of comparative negligence states that the contributory negligence of the person injured will not be a complete bar to recovery, but provides for an apportionment of responsibility, or of damages, in accordance with the relative fault of the parties concerned. *Maxwell v. Hapag-Lloyd Aktiengesellschaft, Hamburg*, 862 F.2d 767 (9th Cir. 1988).

## C. Primary Assumption of the Risk

6. California law applies to this loss because it is an injury to a California resident on a boat owned by a California resident in territorial waters and the vessel is a recreational vessel. *Lauritzen v. Larsen,* 345 U.S. 571 (1953).

7. Alternatively, substantive maritime rules govern maritime cases, and state law must yield to the required uniformity of maritime law. *See, e.g., E. River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 864 (1986); *S. Pac. Co. v. Jensen*, 244 U.S. 205, 216-217 (1917).

8. However, when there is no established general maritime law rule on a particular issue, and the subject does not require national uniformity, admiralty courts may look to the rule of the state in which the court is sitting. *Wilburn Boat Co. v. Fireman's Fund Ins. Co.*, 348 U.S. 310 (1955); see also, *Palestina v. Fernandez*, 701 F. 2d 438 (5th Cir. 1983); *Yamaha Motor Corp. v. Calhoun*, 516 U.S. 199, 215-216 (1996).

9. Primary assumption of the risk has been applied in maritime cases, and there is no uniformity in admiralty law regarding primary assumption of the risk, so the application of California law presents no conflict with general maritime law. *See, e.g., Scheiner v. St. Jovite*, 180 F. Supp. 452 (N.D. Cal. 1960); *Dunion v. Kaiser*, 124 F. Supp. 41 (E.D. Pa. 1954); *Hogan v. Hellman,* 7 F. 2d 949 (S.D. Cal. 1925).

10. "In its primary and proper sense, it [assumption of risk] means that the plaintiff has consented to relieve the defendant of an obligation of conduct toward him, and to take his chance of injury from a known risk. By entering freely and voluntarily into any relation or situation which presents obvious danger, the plaintiff may be taken to accept it, and to agree that he will look out for himself [and his property], and relieve the defendant of responsibility." 124 F. Supp. at 44-45, citing *Prosser, Torts,* Sec. 51, pp. 377, 383.

DEFENDANTS WILLIAM LOGUE AND THE SEARS/LOGUE REVOCABLE TRUST'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW
Case No. 10-CV-1821-JM (DHB); Our File No. 8002.78

- 13 -

11.     Primary assumption of the risk applies where "by virtue of the nature of the activity and the parties' relationship to the activity, the defendant owes no duty to protect the plaintiff from the particular risk of harm that caused the injury." *Knight v. Jewett*, 3 Cal.4th 296, 315-316 (1992).

12.     Primary assumption of the risk co-exists with California's adoption of Comparative fault because the defendant has not breached a duty of care to the plaintiff and therefore a comparative fault analysis is not triggered. *Knight v. Jewett*, 3 Cal.4th 296, 310 (1992).

13.     Under primary assumption of the risk, a defendant can only be held liable if he intentionally injures the plaintiff or engages in conduct that is so reckless as to be totally outside the range or ordinary activities involved in the activity. *Ford v. Gouin*, 3 Cal. 4th 339, 345 (1992).

14.     Conduct is entirely outside the range of ordinary activity if it can be prohibited without discouraging vigorous participation in the activity. *Ford v. Gouin*, 3 Cal. 4th 339, 345 (1992).

15.     The doctrine of primary assumption of the risk is routinely applied to water-related activities, including powerboating.  See, *Ford v. Gouin*, 3 Cal. 4th 339 (1992) (summary judgment affirmed where plaintiff was injured while waterskiing); *Stimson v. Carlson*, 11 Cal. App. 4th 1201 (1992) (pet. denied) (summary affirmed where plaintiff was injured while sailing); *Ferrari v. Grand Canyon Dories*, 32 Cal. App. 4th 248 (1995) (pet. denied) (summary judgment affirmed where plaintiff was injured while white water rafting); *Mosca v. Lichtenwalter*, 58 Cal. App. 4th 551 (1997) (pet. denied) (summary judgment affirmed where plaintiff was injured while fishing); *Truong v. Nguyen*, 156 Cal. App. 4th 865 (2007) (summary judgment affirmed where plaintiffs' daughter died while riding a jet ski).

16.     Courts have even extended the application of the doctrine to non-sporting activities such as the risk of getting burned while attending the Burning Man Festival in the Nevada desert. *Beninati v. Black Rock City, LLC*, 175 Cal. App. 4th 650, 658-659 (2009) (pet. denied).

17. Waves and wakes of all sizes, including unexpected waves, are unavoidable and inherent risks in ocean sportfishing. See, *Lockhart v. Martin,* 159 Cal. App. 2d 760 (1958) ("It is a matter of common knowledge that the movements of fishing boats and other small water craft are constantly affected by the waves and thereby made unsteady, and that this is true without regard to the care exercised in their operation.").

**D.      Medical Causation**

18. Expert testimony is necessary and critical to proof of causation in a personal injury action.  "Causation must be founded upon expert testimony and cannot be inferred from the jury's consideration of the totality of the circumstances unless those circumstances include the requisite expert testimony on causation. *Cottle v. Superior Court,* 3 Cal. App. 4th 1367, 1385 (1992); *Bromme v. Pavvit,* 5 Cal. App. 4th 1487, 1502 (1992)

19. Where injuries have multiple causes, expert testimony is required to establish, to a reasonable medical possibility, that the defendant's conduct caused plaintiff's injuries. *Nelson v. County of Los Angeles*, 113 Cal. App. 4th 790-792 (2003)

20. Expert testimony is required to establish causation to a reasonable medical probability because knowledge of injuries that are wholly subjective is beyond the common experience of the average fact finder. *Jennings v. Polomar Pomerado Health Systems, Inc.*, 114 Cal. App. 4th 1108, 1118 (2003)

**E.      Lost Income Damages**

21. A plaintiff bears the burden of proving that a defendant's alleged unlawful act "caused the loss for which the plaintiff seeks to recover damages. *In re Gilead Sciences Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

22. On damages, as with other elements of negligence, Plaintiff has the burden of proof, and the mere possibility of damages, or pure speculation or conjecture, are not enough to satisfy that burden. *Davis v. Firestone Tire & Rubber Co.*, 196 F.Supp. 407, 409 & Fn.6 (N.D. Cal. 1961) (re causation in directed verdict case)

23. Lost opportunity damages account for loss of "a possible profit or benefit." *TSE v. Ventana Medical Systems, Inc.*, 297 F, 3d 310 (3d Cir. 2002)

24.     Lost opportunity damages are not available where existence of the loss is "wholly speculative." *TSE v. Ventana Medical Systems, Inc.*, 297 F, 3d 310 (3d Cir. 2002); *Matson Plastering Co., Inc. v. Plasterers and Shophands Local No. 66*, 852 F, 2d 1200 (9th Cir. 1988).

25.     The requirement that lost income damages must be reasonably certain and not based upon speculation, guesswork, or conjecture applies equally in tort actions, including maritime cases. *See* Ninth Circuit Model Civil Jury Instructions, No. 5.1 (Damages-Proof) (2007); *Schybinger v. Interlake Steamship Company*, 273 F.2d 307, 313-14 (7th Cir. 1959) (loss of income damages in maritime case must be reasonably certain); *Piscitelli v. Friedenberg*, 87 Cal. App. 4th 953, 989 (2001) (speculative, remote, imaginary, contingent, or merely possible damages cannot serve as a legal basis for recovery; damages must be reasonably certain to have been realized by for the wrongful act).

26.     California law applies to this loss because it is an injury to a California resident on a boat owned by a California resident in territorial waters and the vessel is a recreational vessel. *Lauritzen v. Larsen*, 345 U.S. 571 (1953).

27.     Pursuant to California law, medical damages should be limited to the amounts providers are actually paid.  See, *Howell v. Hamilton Meats*, 52 Cal. 4th 541, 548, 566 (2011) ("[A]n injured plaintiff whose medical expenses are paid through private insurance may recover as economic damages no more than the amounts paid by the plaintiff or his or her insurer for the medical services received or still owing at the time of trial.")

28.     Even if general maritime law applies, general maritime law also provides that a tortuously injured plaintiff who undergoes necessary medical treatment may recover medical expenses reasonably incurred in the past and to be incurred in the future.  *Alexandervich v. Gallagher Bros. Sand & Gravel Corp.*, 298 F.2d 918, 925 (2d Cir. 1961).  This general rule that a plaintiff may only be compensated for expenses actually incurred is consistent in federal cases. *See e.g. Pleiffer v. Jones & Laughlin Steel Corp.*, 678 F.2d 453 (holding that plaintiff is entitled to reimbursement for his loss of earnings, past and prospective, for any impairment of his earning capacity, for medical expenses incurred and to be incurred, and for any other economic loss he has sustained or is likely to sustain); See also *Ross v. United States*, 640 Fed. 511, 521 (holding

DEFENDANTS WILLIAM LOGUE AND THE SEARS/LOGUE REVOCABLE TRUST'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW
Case No. 10-CV-1821-JM (DHB); Our File No. 8002.78

- 16 -

that a plaintiff ordinarily may recover reasonable medical expenses, past and future, which he incurs as a result of a demonstrated injury); *See also Gowdy v. United States*, 271 F. Supp. 733 (1969) (holding that plaintiff is entitled to compensation for all of the reasonable medical expenses which were incurred.)

**F.** **Limitation Act**

29.     Federal maritime law and admiralty jurisdiction apply to all actions arising out of incidents occurring on the navigable waters of the United States which are related to traditional maritime activity. *Sisson v. Ruby*, 497 U.S. 358 (1990).

30.     Where admiralty jurisdiction is present, all courts must apply substantive federal maritime law. *Southern Pacific Ry. Co. v. Jensen,* 244 U.S. 205 (1917).

31.     The Limitation Act, 46 U.S.C.S. § 30501-30512 (formerly 46 U.S.C. § 181, et seq.), applies to all vessels operating on navigable waters. 46 U.S.C.S. § 30502.

32.     The Limitation Act specifically provides at 46 USCS § 30505 that vessel owners may limit their liability:

> [T]he liability of the owner of a vessel for any claim, debt, or liability described in subsection (b) shall not exceed the value of the vessel and pending freight." Subsection (b) provides that "claims subject to limitation. Unless otherwise excluded by law, claims, debts, and liabilities subject to limitation under subsection (a) are those arising from any embezzlement, loss, or destruction of any property, goods, or merchandise shipped or put on board the vessel, any loss, damage, or injury by collision, or any act, matter, or thing, loss, damage, or forfeiture, done, occasioned, or incurred, without the privity or knowledge of the owner.

> 46 U.S.C.S. § 30505.

33.     A vessel that is on the ocean is on navigable waters. *See, e.g., Phillips Petroleum Co. v. Mississippi*, 484 U.S. 469, 490 (1988) (stating that the ocean is "certainly" navigable).

34.     The Limitation Act, 46 U.S.C.S. § 30505, "allows a vessel owner to limit liability for damage or injury, occasioned without the owner's privity or knowledge, to the value of the vessel or the owner's interest in the vessel." *Lewis v. Lewis & Clark Marine, Inc.*, 531 U.S. 438, 446 (U.S. 2001); see also, *Wyandotte Transp. Co. v United States*, 389 U.S. 191 (1967).

35.     "Privity or knowledge" implies some complicity by the vessel owner in the actions that caused the accident. *In re Omega Protein, Inc.*, 548 F.3d 361, 371 (5th Cir. 2008).

36.     "In the case of individual owners, it has been commonly held or declared that privity as used in the statute means some personal participation of the owner in the fault or negligence which caused or contributed to the loss or injury." *Coryell v. Phipps,* 317 U.S. 406, 411 (1943).

37.     An owner who is not on notice of the existence of a defect in the boat cannot be denied the benefit of the limitation. *Coryell v. Phipps*, 317 U.S. 406, 411 (1943).

38.     "[T]he mere presence on board of an owner does not constitute such privity as will preclude limitation of the owner's liability." *Complaint of Interstate Towing Co.*, 717 F. 2d 752, 754 (2d Cir. 1983), *citing Blackler v. Jacobus Transp. Co.*, 243 F.2d 733, 735 (2d Cir. 1957).

39.     The owner's privity and knowledge "must be actual and not merely constructive," and there must be some fault or negligence on the owner's part or in which he in some way participates. *Complaint of Interstate Towing Co.*, 717 F. 2d 752, 754 (2d Cir. 1983), *citing Blackler v. Jacobus Transp. Co.*, 243 F.2d 733, 735 (2d Cir. 1957).

40.     "If the owner is free from fault his actual knowledge of the facts of the accident does not prevent limitation." *Complaint of Interstate Towing Co.*, 717 F. 2d 752, 754 (2d Cir. 1983), *citing Blackler v. Jacobus Transp. Co.*, 243 F.2d 733, 735 (2d Cir. 1957).

41.     Navigational errors of a competent master will not be imputed to a vessel, so long as the owner selected a competent master and did not have actual notice of any pattern of navigational errors. *Petition of Kristie Leigh Enterprises, Inc.,* 72 F.3d 479 (5th Cir. 1996).

42.     Once the captain's competence is established, "it is well-settled that under the Limitation of Liability Act, an owner may rely on the navigational expertise of a competent ship's master." *Matheny v. TVA*, 557 F.3d 311, 317 (6th Cir. Tenn. 2009).

43.     A captain's mistakes in navigation do not justify denying the limitation of liability. *Matheny v. TVA*, 557 F.3d 311, 318 (6th Cir. Tenn. 2009).

## III.     LOGUE DEFENDANTS' DEFENSES

1.     *Assumption of the risk*

Defendants are pursuing the assumption of the risk defense, as described above.

/ / /

DEFENDANTS WILLIAM LOGUE AND THE SEARS/LOGUE REVOCABLE TRUST'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW
Case No. 10-CV-1821-JM (DHB); Our File No. 8002.78

- 18 -

2. *Limitation of liability*

Defendants are pursuing the limitation of liability defense, as set forth above.

3. *Plaintiffs' first amended complaint fails to set forth claims upon which relief can be granted.*

As set forth above, Plaintiffs will be unable to prove either liability theory against Defendants.

4. *Plaintiff was careless, negligent, and reckless, and such conduct caused or contributed to the alleged damages.*

As set forth above, Plaintiff was negligent in fishing from the bow and failing to hold on to the railing despite extreme fatigue.

5. *Plaintiff's subdural hematoma was sustained after the fall on Logue's boat.*

As set forth above, Plaintiff's subdural hematoma was sustained after the fall as a result of his anti-coagulation medication, not as a result of the fall.

6. *Plaintiff's injuries were neither caused nor exacerbated by the events alleged in the claim.*

As set forth above, Plaintiff's injuries were not caused by any known defect with the surface of the ANDALE.

Plaintiff's injuries were not caused by any action or inaction by Captain David Marquez.

Plaintiff's subdural hematoma injuries were not caused by his fall aboard the ANDALE.

7. *If there was a problem with the nonskid, Logue had no notice, either actual or constructive, and cannot be held liable.*

Logue had no notice, either actual or constructive, of any defect in the nonskid, if Plaintiffs are able to prove that one in fact existed.

8. *Plaintiffs failed to mitigate their damages.*

Plaintiff Steven Campbell failed to mitigate his lost income damages, if he is in fact able to prove any lost income. Plaintiff Carlota Franklin-Campbell failed to mitigate her loss of consortium damages, if she is in fact able to prove any loss of consortium damages.

/ / /

DEFENDANTS WILLIAM LOGUE AND THE SEARS/LOGUE REVOCABLE TRUST'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW
Case No. 10-CV-1821-JM (DHB); Our File No. 8002.78

- 19 -

# IV.    LOGUE DEFENDANTS' ABANDONED ISSUES

Defendants have agreed to withdraw the following affirmative defenses identified in their Answer to Plaintiffs' First Amended Complaint, filed on August 3, 2011.

As an Seventh Affirmative Defense, Plaintiffs' claims are barred by the doctrines of waiver and estoppel.

As an Eighth Affirmative Defense, Defendants allege that Plaintiffs' damages, if any, resulted from Plaintiffs' wrongful and/or intentional conduct.

As a Tenth Affirmative Defense, Plaintiffs' claims are barred by the doctrine of laches.

As a Eleventh Affirmative Defense, Plaintiff Steven Campbell's injuries, if any, were caused by an act of God, rather than the action or inaction of Defendants.  (*Defendants agreed to withdraw this affirmative defense with the understanding that Defendants maintain they have no duty to protect against natural conditions of wind and waves acting on the boat*.)

As a Twelfth Affirmative Defense, Plaintiffs' claims are barred by the applicable statute of limitations.

As a Fourteenth Affirmative Defense, Defendants allege that this Court is an improper venue for Plaintiffs' claims.

# V.    LOGUE DEFENDANTS' EXHIBITS

Please see attached Logue Defendants' Exhibit List.

# VI.    LOGUE DEFENDANTS' WITNESSES

### A.    Non-expert prospective witnesses

1.    Defendant William Logue.

a.    Mr. Logue is elderly and in ill physical health with cognitive issues.  If he is unable to attend trial for health reasons, his testimony will be presented by deposition.

2.    David Marquez

a.    Mr. Marquez is a Mexican resident, currently without a passport or visa for travel to the United States.  If he is unable to attend trial, his testimony will be presented by deposition.

/ / /

/ / /

1     3.     Andy Marquez

2            a.     Mr. Marquez is a Mexican resident, currently without a passport or
                    visa for travel to the United States.  If he is unable to attend trial,
3                   his testimony will be presented by deposition.

4     4.     Robert Garavello

5     5.     Kristina Sinkunas

6     6.     Magdalena Silva

7     7.     Santiago Esqueda

8     8.     Patrick Sullivan

9     9.     Mark S. Wheeler

10    10.    Pamela S. Wheeler

11    11.    Timothy J. Mullahey

12    12.    William Merrell

13    13.    Chaur Nan (Jack) Chen

14    14.    Craig Elliott

15    **B.     Expert Prospective Witnesses**

16    **Harvey Hunnicutt**

17            Mr. Hunnicutt is an experienced marlin fisherman, with particular
              knowledge and expertise in regard to marlin fishing in Cabo San Lucas,
18            Mexico.  He is expected to provide rebuttal testimony to address the
              testimony of Plaintiffs' expert Thomas Carney.  He is also expected to
19            testify as to the standard of care and custom of practice aboard private,
              recreational seagoing vessels engaged in marlin fishing in Cabo San
20            Lucas, Mexico and the duties of owners, masters and captains to
              passengers on board private, recreational vessels at sea engaged in marlin
21            fishing in Cabo San Lucas.

22    **Brad Wong**
      Boster, Kobayashi & Associates
23    50 Rickenbacker Circle
      Livermore, CA 94551
24
              Mr. Wong is a mechanical engineer who specializes in technical aspects of
25            accident reconstruction and injury causation.  Mr. Wong is expected to
              testify concerning the cause of Plaintiff's fall in this case, including
26            without limitation, that the deck surface on the ANDALE did not present
              an unreasonable risk of harm and what other factors were the contributors
27            to Plaintiff's fall.

28    / / /

1   **Kim Joseph Onisko, C.P.A.**
    Onisko & Scholz, LLP
2   5000 E. Spring Street, Suite 200
    Long Beach, California 90815
3
          Mr. Onisko is a certified public and forensic accountant.  He is also
4         certified in financial forensics.  He is expected to testify concerning
          damage issues in this case, including without limitation, loss of past and
5         future income, and all factors relevant thereto.

6   **William E. Bowman, M.D.**
    Orthopedic Medical Group
7   7910 Frost Street, Suite 200
    San Diego, CA 92123
8
          Dr. Bowman is an orthopedic surgeon.  He is expected to testify regarding
9         Plaintiff STEVEN CAMPBELL's alleged injuries, including without
          limitation, history, diagnosis, treatment, prognosis, causation and other
10        factors that may affect Plaintiff's need for past or future medical care.  He
          is also expected to testify regarding Plaintiff STEVEN CAMPBELL's
11        ability to work in the past and the future.

12  **Jeffrey F. Caren, M.D.**
    Cedars-Sinai Medical Towers
13  8635 West Third Street, Suite 890W
    Los Angeles, CA 90048
14
          Dr. Caren is a cardiologist.  He is board certified in internal medicine and
15        cardiovascular diseases.  He is expected to testify regarding Plaintiff
          STEVEN CAMPBELL's alleged injuries, including without limitation,
16        history, diagnosis, treatment, prognosis, causation, and other factors that
          may affect Plaintiff's need for past or future medical care.  He is also
17        expected to testify regarding Plaintiff STEVEN CAMPBELL's ability to
          work in the past and the future.
18

19  **Michael A. Lobatz, M.D.**
    The Neurology Center
20  320 Santa Fe Dr., Suite108
    Encinitas, CA 92024
21
          Dr. Lobatz is a neurologist.  He is board certified in neurology and
22        psychiatry.  He is expected to testify regarding Plaintiff STEVEN
          CAMPBELL's alleged injuries, including without limitation, history,
23        diagnosis, treatment, prognosis, causation, and other factors that may
          affect Plaintiff's need for past or future medical care.  He is also expected
24        to testify regarding Plaintiff STEVEN CAMPBELL's ability to work in the
          past and the future.
25  / / /

26  / / /

27  / / /

28  / / /

**Non-Retained Experts:**

**Peter Falonk**
Explorer Marine Services, Inc.
2818 Canon Street
San Diego, CA 92106

Mr. Falonk is a marine surveyor who prepared "Inspection Findings" for the Andale in 2009. He is expected to testify on matters relating to liability in the case, including but not limited to the condition of the Andale.

**Bunker A. Hill**
Bunker A. Hill Marine Surveyor, LLC
P.O. Box 3348
Newport Beach, CA 92659

Mr. Hill is a marine surveyor who prepared "Report of Survey" for the Andale in March 2009. He is expected to testify on matters relating to liability in the case, including but not limited to the condition of the Andale.

**Kenneth S. Cohen**
Kenneth S. Cohen CPA, Inc.
542 Forrest Bluff
Encinitas, CA 92024

Mr. Cohen is an accountant who prepared Plaintiff STEVEN CAMPBELL's tax returns for 2003 to 2009. Mr. Cohen is expected to testify regarding Plaintiff's damage claims, including but not limited to the claimed loss of past and future income.

**Dr. Peter Colaprete**
Sharp Grossmont Hospital
5555 Grossmont Center Drive
La Mesa, CA 91942

Dr. Colaprete is a treating physician of Plaintiff STEVEN CAMPBELL. Dr. Colaprete is expected to testify concerning medical issues in the case, including without limitation, Plaintiff STEVEN CAMPBELL's alleged injuries, including without limitation, history, diagnosis, treatment, prognosis, causation and other factors that may affect Plaintiff's need for past or future medical care. Dr. Colaprete is also expected to testify as to the amount paid for treatment rendered and the cost of future care.

**Dr. Nicola Bugelli**
Sharp Grossmont Hospital
5555 Grossmont Center Drive
La Mesa, CA 91942

Dr. Bugelli is a treating physician of Plaintiff STEVEN CAMPBELL. Dr. Bugelli is expected to testify concerning medical issues in the case, including without limitation, Plaintiff STEVEN CAMPBELL's alleged injuries, including without limitation, history, diagnosis, treatment,

DEFENDANTS WILLIAM LOGUE AND THE SEARS/LOGUE REVOCABLE TRUST'S MEMORANDUM OF CONTENTIONS
OF FACT AND LAW
Case No. 10-CV-1821-JM (DHB); Our File No. 8002.78

- 23 -

prognosis, causation and other factors that may affect Plaintiff's need for past or future medical care. Dr. Bugelli is also expected to testify as to the amount paid for treatment rendered and the cost of future care.

**Dr. Adam Ellis**
Scripps Memorial Hospital Encinitas
354 Santa Fe Drive
Encinitas, CA 92024

Dr. Ellis is a treating physician of Plaintiff STEVEN CAMPBELL. Dr. Ellis is expected to testify concerning medical issues in the case, including without limitation, Plaintiff STEVEN CAMPBELL's alleged injuries, including without limitation, history, diagnosis, treatment, prognosis, causation and other factors that may affect Plaintiff's need for past or future medical care. Dr. Ellis is also expected to testify as to the amount paid for treatment rendered and the cost of future care.

**Dr. Jay Rosenberg**
Scripps Memorial Hospital Encinitas
354 Santa Fe Drive
Encinitas, CA 92024.

Dr. Rosenberg is a treating physician of Plaintiff STEVEN CAMPBELL. Dr. Rosenberg is expected to testify concerning medical issues in the case, including without limitation, Plaintiff STEVEN CAMPBELL's alleged injuries, including without limitation, history, diagnosis, treatment, prognosis, causation and other factors that may affect Plaintiff's need for past or future medical care. Dr. Rosenberg is also expected to testify as to the amount paid for treatment rendered and the cost of future care.

**Dr. Fred Simon**
Scripps La Jolla
988 Genesee Avenue
La Jolla, CA 92037

Dr. Simon is a treating physician of Plaintiff STEVEN CAMPBELL. Dr. Simon is expected to testify concerning medical issues in the case, including without limitation, Plaintiff STEVEN CAMPBELL's alleged injuries, including without limitation, history, diagnosis, treatment, prognosis, causation and other factors that may affect Plaintiff's need for past or future medical care. Dr. Simon is also expected to testify as to the amount paid for treatment rendered and the cost of future care.

**Dr. Andrew Stuart Dennish**
Scripps La Jolla
988 Genesee Avenue
La Jolla, CA 92037

Dr. Dennish is a treating physician of Plaintiff STEVEN CAMPBELL. Dr. Dennish is expected to testify concerning medical issues in the case, including without limitation, Plaintiff STEVEN CAMPBELL's alleged injuries, including without limitation, history, diagnosis, treatment,

DEFENDANTS WILLIAM LOGUE AND THE SEARS/LOGUE REVOCABLE TRUST'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW
Case No. 10-CV-1821-JM (DHB); Our File No. 8002.78

- 24 -

prognosis, causation and other factors that may affect Plaintiff's need for past or future medical care. Dr. Dennish is also expected to testify as to the amount paid for treatment rendered and the cost of future care.

**Dr. James Schwendig**
Scripps La Jolla
988 Genesee Avenue
La Jolla, CA 92037

Dr. Schwendig is a treating physician of Plaintiff STEVEN CAMPBELL. Dr. Schwendig is expected to testify concerning medical issues in the case, including without limitation, Plaintiff STEVEN CAMPBELL's alleged injuries, including without limitation, history, diagnosis, treatment, prognosis, causation and other factors that may affect Plaintiff's need for past or future medical care. Dr. Schwendig is also expected to testify as to the amount paid for treatment rendered and the cost of future care.

**Dr. Martin Griglak**
Scripps La Jolla
988 Genesee Avenue
La Jolla, CA 92037

Dr. Griglak is a treating physician of Plaintiff STEVEN CAMPBELL. Dr. Griglak is expected to testify concerning medical issues in the case, including without limitation, Plaintiff STEVEN CAMPBELL's alleged injuries, including without limitation, history, diagnosis, treatment, prognosis, causation and other factors that may affect Plaintiff's need for past or future medical care. Dr. Griglak is also expected to testify as to the amount paid for treatment rendered and the cost of future care.

**Dr. George Groth**
6037 La Granada
Rancho Santa Fe, CA 92067

Dr. Groth is a treating physician of Plaintiff STEVEN CAMPBELL. Dr. Groth is expected to testify concerning medical issues in the case, including without limitation, Plaintiff STEVEN CAMPBELL's alleged injuries, including without limitation, history, diagnosis, treatment, prognosis, causation and other factors that may affect Plaintiff's need for past or future medical care. Dr. Groth is also expected to testify as to the amount paid for treatment rendered and the cost of future care.

**Dr. Scott Leary**
Scripps La Jolla
988 Genesee Avenue
La Jolla, CA 92037

Dr. Leary is a treating physician of Plaintiff STEVEN CAMPBELL. Dr. Leary is expected to testify concerning medical issues in the case, including without limitation, Plaintiff STEVEN CAMPBELL's alleged injuries, including without limitation, history, diagnosis, treatment, prognosis, causation and other factors that may affect Plaintiff's need for

DEFENDANTS WILLIAM LOGUE AND THE SEARS/LOGUE REVOCABLE TRUST'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW
Case No. 10-CV-1821-JM (DHB); Our File No. 8002.78

- 25 -

past or future medical care.  Dr. Leary is also expected to testify as to the amount paid for treatment rendered and the cost of future care.

**Dr. Robert Tonks**
Scripps La Jolla
988 Genesee Avenue
La Jolla, CA 92037

Dr. Tonks is a treating physician of Plaintiff STEVEN CAMPBELL.  Dr. Tonks is expected to testify concerning medical issues in the case, including without limitation, Plaintiff STEVEN CAMPBELL's alleged injuries, including without limitation, history, diagnosis, treatment, prognosis, causation and other factors that may affect Plaintiff's need for past or future medical care.  Dr. Tonks is also expected to testify as to the amount paid for treatment rendered and the cost of future care.

Dated: January 18, 2013[1]            GIBSON ROBB & LINDH LLP


By:  S/ DIANA CASTIOV
    Diana Castiov
    dcastiov@gibsonrobb.com
    Attorneys for Defendants
    WILLIAM LOGUE and THE
    SEARS/LOGUE REVOCABLE TRUST

---

[1] Logue Defendants attempted to efile their pretrial documents on January 18, 2013, but were unable to do so as the Southern District ECF System was offline.

DEFENDANTS WILLIAM LOGUE AND THE SEARS/LOGUE REVOCABLE TRUST'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW
Case No. 10-CV-1821-JM (DHB); Our File No. 8002.78

- 26 -