# Exhibit "B"

MICHAEL M. SAMPSEL, P.E. - 6/6/2012

Page 1

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

STEVEN CAMPBELL, an individual; and )
CARLOTA FRANKLIN-CAMPBELL, an        )
individual,                          )
                                     )         CASE NO.
            Plaintiffs,              )         10-CV-1821-JM-DHB
                                     )
       vs.                           )         VOLUME I
                                     )         Pages 1 - 105
WILLIAM LOGUE, an individual and as  )
a Trustee for The Sears/Logue        )
Revocable Trust; THE SEARS/LOGUE     )
REVOCABLE TRUST; DAVID MARQUEZ, an   )
individual; MIKELSON YACHTS, INC., a )
California Corporation; BLUEWATER    )
YACHT BUILDERS, LTD., a Foreign      )
Corporation; YA PLASTICS             )
CORPORATION, a Foreign Corporation;  )
and NAN YA PLASTICS CORPORATION, a   )
Delaware Corporation,                )
                                     )
            Defendants.              )
                                     )
_____

                                     )
AND RELATED CROSS-ACTIONS.           )
                                     )
_____

DEPOSITION OF MICHAEL M. SAMPSEL, P.E.

TAKEN ON: Wednesday, June 6, 2012

TAKEN AT: 5440 Morehouse Drive
          Suite 4400
          San Diego, California

REPORTED BY: KATHRYN B. CONNELL
             CSR NO. 3079, RPR, CRR

Merrill Corporation - New York
1-800-325-3376                    www.merrillcorp.com/law

```
 1   appropriate coefficient of friction on a vessel in
 2   connection with that case dealing with the Navy vessel
 3   and movement from the ladder to the diamond tread?
 4        A.   The only thing -- it's been some time ago.
 5   The only thing I really remember about that was the
 6   difference.
 7        Q.   To the best of your recollection, have you
 8   ever testified that the appropriate standard of
 9   coefficient of friction for a deck surface is in excess
10   of .5?
11        A.   That would be my opinion.  How many times I
12   may have said that, I don't know.
13        Q.   And whenever you've said that, have you said
14   that with reference to the study that's referenced at
15   No. 6 on your documents reviewed or have you said that
16   in the absence of that study as well?
17        A.   Probably in absence of that study.  The 0.5 is
18   a land-based standard.  Obviously, a boat or a ship
19   moves.
20        Q.   Have you ever given an opinion as to exactly
21   what the appropriate standard of coefficient of friction
22   should be for a deck surface on a vessel?
23        A.   I'm going to say yes, and I'm going to let you
24   follow it up with a --
25        Q.   Sure.
```

1    Q.   Or not engineer, as the case may be.
2    A.   I would probably say, based on what I know, it
3  was never engineered.
4    Q.   Is it your opinion, in connection with this
5  case, that the standard in the industry requires that a
6  yacht deck surface be specifically engineered to meet a
7  certain COF --
8    A.   I would --
9    Q.   -- or just be a certain COF?
10   A.   I would think the manufacturer would want to
11 ensure himself that he would have sufficient coefficient
12 of friction.
13   Q.   I gather that that's what you think a
14 manufacturer would want to do; but do you have any
15 specific experience, training to render an expert
16 opinion as to that being the -- in fact, the standard in
17 the manufacturing industry that, in fact, deck surfaces
18 are engineered to meet specific COFs?
19   A.   I'm not sure I know how to answer the
20 question.
21   Q.   Well, you either do or don't know whether or
22 not manufacturers engineer their deck surfaces to meet
23 certain COFs.
24   A.   There is -- other than providing
25 slip-resistant surfaces in certain areas in the ABYC

```
 1    spec, it would behoove a manufacturer to have a nonskid
 2    or slip-resistant surface.
 3         Is there a general requirement?  I would
 4    contrast Hatteras Yachts against Mikelson.
 5         Q.   Well, we'll talk about that; but really, the
 6    question is from your experience and training, are you
 7    aware of what yacht manufacturers or boat manufacturers
 8    do with regard to engineering their surfaces, "A"?
 9    That's the first question.  So I won't make it compound,
10    answer that one.
11         A.   Thank you.
12              Other than to keep from being sued because the
13    deck is too slippery -- I'd say that's their standard.
14         Q.   But you don't know specifically.  Other than
15    the call you made to Hatteras in this case, you haven't
16    checked with any other manufacturer, either in
17    connection with this case or any case, to determine what
18    the standard in the industry is for how deck surfaces
19    are engineered or whether they are, in fact, engineered
20    to meet any specific COF?
21         A.   Well, you --
22         Q.   I know you made that assumption that it would
23    make sense.  The question is do you know?  Do you know
24    by reference to any specific inquiry, study, document,
25    or otherwise?
```

MICHAEL M. SAMPSEL, P.E. - 6/6/2012

Page 38

1    A.   You reference Hatteras. That was a specific
2  phone call I made in regard to this particular case.
3    Q.   And we will talk about that, because it
4  doesn't seem like you addressed that question with them.
5  But even with that question, do you know whether
6  Hatteras engineered their surface to meet a certain COF?
7    A.   Not a specific value, just a nonskid surface.
8    Q.   Right. Okay.
9    A.   Over the years, I would say yes, I have dealt
10 with a number of issues and a number of manufacturers;
11 and if you are asking for a very specific number, no.
12   Q.   What's relevant in this case is at or about
13 the time that this vessel was manufactured, was there a
14 standard in the industry that required -- or not
15 required -- whereby manufacturers of yachts of this type
16 or others engineered their deck surfaces to meet a
17 specific COF standard?
18   A.   Well, I would say that in response to the
19 question, I don't think this deck was engineered.
20   Q.   No. And I gather it's your opinion that it
21 needed to be. And what I'm asking you is on what do you
22 base that? In other words, do you know about the
23 standard in the industry? And you either know it
24 because you've studied it and you can tell me about it
25 or you don't; and really your opinion is it should be.

1   And if your opinion is it should be, that's
2   fine. But I want to know is what is that in reference
3   to? What do you know about the standard?
4       A.   That you are not supposed to slip and fall.
5       Q.   Sure.
6       A.   But that's about the limit of it.
7       Q.   Okay. So we don't know specifically whether
8   all the other manufacturers of yachts engineer their
9   surfaces to make them nonslip resistant. We know that
10  they should. We know that what they want to do is
11  create a non- -- a slip-resistant surface so that people
12  don't trip and fall and hurt themselves and sue them;
13  but we really don't know if the standard in the industry
14  amongst those manufacturers is to specifically engineer
15  them, those deck surfaces, to meet a certain COF, right?
16      A.   That is correct.
17      Q.   Okay. So really, the key question when it
18  comes to Mr. Chen's testimony or your opinion in this
19  case is did the surface or did the surface not meet
20  either the .05 standard or the elevated standard that
21  you claim should apply, right? Either it did or it
22  didn't.
23      A.   Could you repeat the question.
24      Q.   Sure. I'll repeat it.
25          Your inquiry in connection with this case and

MICHAEL M. SAMPSEL, P.E. - 6/6/2012

Page 40

```
 1    your opinion is --
 2           MR. SCUDI:  I'm going to object to your
 3    questioning because you keep talking about a coefficient
 4    of friction of .05, and I have never seen reference to a
 5    .05 coefficient of friction.
 6           MR. BRUCCULERI:  Well, that's what he said.
 7    .5.
 8           MR. SCUDI:  0.5.
 9           MR. BRUCCULERI:  0.5.
10           MR. SCUDI:  So for purposes of the record,
11    you've been using .05 in your examination.
12           MR. BRUCCULERI:  I just repeated what he said.
13    So he said it wrong and I said it wrong.  But that's
14    okay.  He didn't say 0.5, he said .05, and I was
15    repeating it; but we can understand that when I've
16    referenced .05, I was referring to 0.5 --
17           MR. SCUDI:  Okay.
18           MR. BRUCCULERI:  -- which is the relevant
19    land-based standard coefficient of friction, correct?
20           THE WITNESS:  I'm glad you said "land based."
21           MR. BRUCCULERI:  Because we don't have a
22    written sea-based standard coefficient of friction
23    applicable to yacht manufacture, correct?
24           THE WITNESS:  That is correct.
25    ///
```

MICHAEL M. SAMPSEL, P.E. - 6/6/2012

Page 41

1   BY MR. BRUCCULERI:
2       Q.  So going back to my question, your opinion in
3   this case is really limited to whether or not the
4   surface on board the Mikelson yacht, specifically in the
5   area where Mr. Campbell contends that he fell, was
6   sufficient or met a sufficient coefficient of friction
7   standard, whether it be the .5 standard or some
8   heightened standard that should be applicable, in your
9   opinion, to marine decks?
10      A.  According to my measurements, it doesn't even
11  meet the land-based standard, much less any elevated
12  standard.
13      Q.  Understood.  And really, what I was trying to
14  exclude was any opinion on your part that there is a
15  standard in the industry that requires engineering to
16  meet a certain COF, because I understand that now that's
17  not your testimony, correct?
18          Your testimony is that there maybe should be,
19  but not that you're aware of any specific custom and
20  practice in the industry to manufacture deck surfaces to
21  meet a certain standard COF?
22      A.  Well, maybe we will get into the technical
23  details later, but -- and that involves the list on the
24  vessel or the rolling of the vessel; but regarding a
25  specific number, no.

MICHAEL M. SAMPSEL, P.E. - 6/6/2012

```
 1   STATE OF CALIFORNIA  )
 2                        : SS.
 3   COUNTY OF SAN DIEGO  )
 4
 5        I, Kathryn B. Connell, Certified Shorthand
 6   Reporter No. 3079 for State of California, do hereby
 7   certify:
 8        That prior to being examined, the witness named
 9   in the foregoing deposition was duly sworn to testify to
10   the truth, the whole truth, and nothing but the truth;
11        That said deposition was taken down by me in
12   shorthand at the time and place therein named and
13   thereafter reduced by me to typewritten form and that
14   the same is a true, correct, and complete transcript of
15   said proceedings.
16        Before completion of the deposition, a review of
17   the transcript [ X ] was [  ] was not requested.  If
18   requested, any changes made by the deponent (and
19   provided to the reporter) during the period allowed are
20   appended hereto.
21        I further certify that I am not interested in the
22   outcome of the action.
23        Witness my hand this 14th day of June 2012.
24
25                          Kathryn B. Connell, CSR No. 3079
```